STATE of Tennessee, Appellee,

v.

Anthony Darrell Dugard
HINES, Appellant.

Supreme Court of Tennessee.

Sept. 5, 1995.

Opinion Denying Rehearing
March 11, 1996.

Brock Mehler, Capital Case Resource Center, Nashville (Appeal Only), Tom Bloom, Rothchild & Assoc., Nashville (Appeal Only), Steve Stack, Ashland City, (Trial Only), for appellant.

Charles W. Burson, Attorney General & Reporter, Amy L. Tarkington, Assistant Attorney General, Nashville, for appellee.

## OPINION

O'BRIEN, Special Justice.

This defendant was convicted of murder in the perpetration of armed robbery and sentenced to death. On direct appeal this Court affirmed defendant's conviction and remanded the case for resentencing because of erroneous jury instructions.[1]

The resentencing hearing was conducted in June, 1989. The jury returned a death verdict based upon its finding of three (3) aggravating circumstances, Tenn.Code Ann. § 39–

---

1. *State v. Hines*, 758 S.W.2d 515 (Tenn.1988).

2–203(i)(2), (5), and (7) (1982). The case is now before us on appeal from that judgment.

The proof at the resentencing hearing showed that the defendant, who was staying at the Ce'Bon Motel in Cheatham County on the morning of March 3, 1985, stabbed a motel maid to death. The defendant also stole money the motel manager had left with the victim and took the victim's automobile.

The State introduced proof that the defendant had previously been convicted of assault in the first degree. A detective who had investigated the case testified that the defendant had inflicted serious physical harm to the victim in this prior case. The State also presented proof that the defendant had stabbed the victim in the present case multiple times with a sharp instrument, probably a knife. Three of these wounds were lethal and had penetrated the victim's chest five to six inches. The pathologist who had performed the autopsy of the victim testified that all the lethal wounds were inflicted at about the same time and that death would have occurred within four to six minutes, most of which time the victim would have remained conscious. Defensive wounds were found on the victim's hands. Her clothing had been pulled up and her panties had been cut in half and removed from her body. About the time of death, and shortly after the infliction of the lethal wounds to the chest, the defendant had inserted a flat object through the victim's vaginal orifice into the vaginal pouch until the instrument penetrated the vaginal dome and passed into the abdominal cavity. A twenty dollar bill had been placed under the victim's watchband. No semen or any other evidence of ejaculation was found.

At the time of her death, the victim had in her possession a bank bag containing approximately $100 in proceeds from the motel. The empty bag was discovered in the room where the victim's body was found. The victim's automobile was also missing. Around 12:40 p.m. the day of the murder, another employee of the motel saw the vehicle being driven out of the motel parking lot by someone other than the victim.

In mitigation, the defendant presented proof that, while in prison on this conviction, he had presented no serious disciplinary problems and posed no threat to the prison population. The defendant also presented proof of a troubled childhood. His father had abandoned the family when the defendant was young. His mother had an alcohol problem. In his teens the defendant became involved in sniffing gasoline and glue and began to abuse alcohol and drugs. He also exhibited self-destructive behavior. Dr. Pamela Auble, a clinical psychologist, testified that the defendant was suffering from a paranoid personality disorder and dysthymia, or chronic depression. According to Dr. Auble, the defendant would suppress his feelings until they "boiled up" under stress. In her opinion, the defendant, who had returned from turbulent visits with his parents and girlfriend shortly before he committed the murder, was under stress when he killed the victim. Dr. Ann Marie Charvat, a sociologist, also testified about the damaging effect of the circumstances of his childhood on the defendant.

During voir dire in this case, the defendant and a member of the District Attorney General's office reached a plea agreement. Defendant agreed to plead guilty to a new offense on a criminal information and receive a life sentence to be served consecutively with a separate life sentence in this case. The trial judge rejected the plea bargain agreement because he felt that the case should be decided by a jury and that it was not in the interest of justice to allow a plea bargain. Defendant moved the trial judge to recuse himself from the case because his prior knowledge of the facts might preclude impartiality. The judge denied this motion but agreed to review a stipulation of mitigating factors in the case and reconsider his decision on the plea bargain agreement. After review of this mitigating information, the trial judge refused to reverse his decision and refused to accept the plea bargain agreement.

Defendant asserts that the trial judge did not have the authority to reject the plea bargain agreement and insist the parties go forward with a resentencing proceeding. He cites Tennessee Rule of Criminal Procedure 12.3(b), which requires the District Attorney

to give written notice of intent to seek the death penalty, arguing that the trial judge has no authority to approve or disapprove the State's election.

Our review of this record makes plain that it does not present quite the picture painted in defendant's brief in regard to the Court's rejection of the submitted negotiated plea. It appears that there had been an unrecorded discussion of the issue in chambers which defense counsel wished to have placed on the record. Counsel stated the agreement as follows:

"For the record, in plea negotiations with the State we had worked out an agreement whereby Mr. Hines would plead to a new offense on a criminal information and receive a consecutive life sentence for a life sentence in this particular case. The district attorney's office had discussed it with the family, and they were satisfied with the result. And there had been some concern over what the sentence in this case may be, and they were happy with a life sentence, for parole considerations and everything else."

After discussing the matter with the Attorney General, the trial judge ruled:

"Well obviously, I presided at the prior trial, and I know what the facts of this case are, and I reject the plea bargain. I think that this is a case that ought to be decided by a jury, and I do not think it is in the interest of justice to allow the plea bargain in this case, and I reject it."

Immediately thereafter a defense motion for recusal was made on the premise that the judge might not be impartial because he had presided at the original trial and knew all the facts and circumstances of the case.

Tenn.R.Crim.P. 11(e)(2) provides that a trial judge may accept or reject a plea agreement in the exercise of his discretion. One valid reason for rejecting a plea agreement is that the proposed sentence is considered too lenient under the circumstances.

*State v. Todd,* 654 S.W.2d 379, 382 (Tenn. 1983). In this case, the trial judge felt that the facts of the case, even when mitigating circumstances were considered, should be decided by a jury. He expressed the view that the interest of justice did not allow a plea bargain and he rejected it. We find that the trial judge acted within his authority under Rule 11 in rejecting the plea bargain.[2]

In his brief defendant argues that the trial judge should have recused himself from the case, or at least from determining whether the plea bargain was acceptable, because he was not a disinterested and neutral judge since he did not agree with the prior judgment of this Court in this case. He implies the Court's judgment was warped and influenced by the need to demonstrate he had been correct in the first case. He says the judge ignored the fact that the victim's family accepted the agreement, and dismissed defendant's mitigating factors. The argument is that even if actual partiality is not shown, there is an appearance of partiality which violates Supreme Court Rule 10, Canon 3(C)(1) mandating that the trial judge disqualify himself in a proceeding in which his impartiality might reasonably be questioned.

A motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record. *State ex rel. Phillips v. Henderson,* 220 Tenn. 701, 423 S.W.2d 489, 492 (1968). The general rule is that a trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever his impartiality can reasonably be questioned. *State v. Cash,* 867 S.W.2d 741, 749 (Tenn. Crim.App.1993); *Lackey v. State,* 578 S.W.2d 101, 104 (Tenn.Crim.App.1978). A judge is in no way disqualified because he tried and made certain findings in previous litigation. *King v. State,* 216 Tenn. 215, 391 S.W.2d 637, 642 (1965). The trial judge in this case

---

**2.** This is not to say that the State must receive permission from the trial court should it wish to withdraw its notice of intent to seek the death penalty under Tenn.R.Crim.P. 12.3(b). The sole discretion as to whether to seek a sentence of death under the appropriate circumstances is vested in the prosecutor. *See, e.g., State v. Brimmer,* 876 S.W.2d 75, 86 (Tenn.1994); *State v. Cazes,* 875 S.W.2d 253, 268 (Tenn.1994).

stated that he was not prejudiced against the defendant. There is no indication in the record that the reversal of the prior sentencing hearing in any way biased the judge against the defendant or was the reason for rejection of the plea agreement. Furthermore, there is no showing that the judge refused the plea bargain in order to vindicate himself in reference to the prior proceedings. Under this record, it cannot reasonably be questioned that the trial judge was able to render an impartial decision regarding the plea bargain and to preside over this case in a neutral and unbiased manner.

Defendant says the trial judge erred by declining to grant a defense motion for continuance when the State failed to respond to motions requesting written notice of aggravating circumstances pursuant to Tenn. R.Crim.P. 12.3(b). The rule requires, when a capital offense is charged and the State intends to ask for the death penalty, written notice shall be filed not less than 30 days prior to trial. The notice must specify the aggravating circumstances the State intends to rely upon at a sentencing hearing. If the notice is filed later than 30 days, the trial judge is to grant the defendant upon his motion a reasonable continuance of the trial. The record shows that a written notice, setting forth the three aggravating circumstances found by the jury at the original trial, was filed approximately a week before resentencing began. If this were the only notice provided in the case, we would be constrained to find that the State had failed to comply with the clear language of the Rule and that the trial court had erred in not granting a continuance. *Cf. State v. Lowe,* 811 S.W.2d 526 (Tenn.1991).

■ In light of the unique posture of this case, however, as a continuation of an earlier proceeding and not a new proceeding in itself, we conclude that the defendant was on notice sufficient to satisfy the requirements of Rule 12.3(b), *cf. State v. Chase,* 873 S.W.2d 7, 9 (Tenn.Crim.App.1993), subject to the requirement that absent a new notice the State was limited at the resentencing hearing to the aggravating circumstances set forth in the initial notice. In the present case, the State had filed written notice of intent to

seek the death penalty and of the aggravating circumstances on which it intended to rely in October 1985, prior to the original trial. All three of the aggravating circumstances relied upon by the State on resentencing were included in this notice. Under these circumstances, we find that the requirements of Rule 12.3(b) were met and that a continuance was not mandated. Furthermore, there has been no showing that the defendant has suffered prejudice as a result of the State's failure to re-file the notice before the resentencing hearing. Absent a showing of prejudice, the trial court did not abuse its discretion in refusing to grant a continuance. *Cf. State v. Stephenson,* 752 S.W.2d 80, 81 (Tenn.1988).

■ It is argued that the Court should have granted the continuance because of defendant's difficulty in obtaining the cooperation and attendance of certain out-of-state witnesses. These witnesses were persons involved in the juvenile correction system in the State of Kentucky, who, defendant claimed, would be necessary to adequately present what had happened to him in that jurisdiction. The Court denied a continuance on this basis; however, it certified the materiality of the testimony of these witnesses and allowed the defendant time to bring them to court. A motion for a continuance is addressed to the sound discretion of the trial judge and his ruling on the motion will not be disturbed in the absence of an abuse of discretion to the prejudice of the defendant. *State v. Strouth,* 620 S.W.2d 467, 472 (Tenn. 1981). An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted. *State v. Wooden,* 658 S.W.2d 553, 558 (Tenn.Crim.App.1983). Our review of this record discloses no such abuse of discretion in the present case, nor has the defendant established that he was prejudiced by denial of the motion. *See State v. Goodman,* 643 S.W.2d 375, 378 (Tenn.Cr.App.1982).

The record is clear that the trial judge very patiently gave counsel every opportunity to include in the record whatsoever they

requested as far as possible in order to assure defendant a fair trial. There is nothing in the record to show that he dismissed defendant's mitigating factors.

Defendant says the prosecutorial comment on the assistance provided by the Capital Case Resource Center violated his rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 8, 9, and 16 of the Tennessee Constitution. The Capital Case Resource Center assisted the defendant in this case. An attorney from the center was present in court during the trial. During the State attorney's cross-examination of a defense witness, Dr. Pamela Auble, he asked the witness, over objection, about her present and prior work with the center, which the prosecutor described as "an organization that assists in the defense of people charged with capital crimes," whose "primary motivation or primary reason for ... existence is to keep somebody from going to the electric chair." The prosecutor then pointed out the center's counsel and ascertained that he had provided the witness with information. He did the same with Dr. Ann Marie Charvat, a sociologist who was engaged to testify for the defense. Defense counsel did not object to the questions put to Dr. Charvat. Also, during closing argument, the District Attorney argued that Dr. Charvat "was assisting the Capital Case Resource Group whose sole function in life is to fight against the death penalty regardless of the circumstances." Defendant objected that this comment was not based on any evidence. The court sustained the objection and instructed the jury to disregard the remark.

Defendant asserts the prosecutor's comments had no basis in fact, penalized his exercise of his right to counsel, and deprived him of a reliable and individualized sentencing determination.

■ We have read this record carefully, and we observe in the first instance that the District Attorney General's comments did not have the portent for the prejudicial error attributed to them by the defendant. We agree that his remarks were expressions of his own opinion and as such should not have been interjected into the record. There was

nothing offered in evidence to warrant such inappropriate comments and such conduct on the part of State's counsel cannot be condoned. Nonetheless, the trial judge carefully monitored the cross-examination, recognized the appropriate objections when they were made, and instructed the jury accordingly. The conduct of the State's attorney in his attempt to transform his own assessment of the Resource Center's bias into evidence and his subsequent statements during argument, relating matters that were not supported by evidence, came close to a denial of due process, but we are satisfied the diligence of the trial judge properly protected the defendant's right to a fair trial.

■ A violation of defendant's right to counsel occurs when a prosecutor's examination of a witness or argument seeks to penalize the defendant for exercising his constitutional right. *See, e.g., United States v. McDonald,* 620 F.2d 559, 562–564 (5th Cir. 1980). The cross-examination of Drs. Auble and Charvat in this case sought to impeach the two witnesses by establishing pro-defendant bias on their part because they had worked with the Resource Center in the past, and by attacking the reliability of the information on which they had based their opinions because some of it had been obtained from the Resource Center. This line of cross-examination did not rise to the level of penalizing defendant's right to counsel by asking the jury to make a negative inference from the defendant's exercise of this right. The prosecutor sought to attack, not the defendant's use of an attorney or the facilities of the Resource Center, but in his view, the reliability and impartiality of the witnesses because of their attitudes toward capital punishment and the bias of the information on which their opinions were, at least in some part, based.

■ We also find no merit in defendant's separate Eighth Amendment claim under *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), that his rights to a reliable sentencing hearing and preservation of mitigating evidence have been abridged. The prosecutor's cross-examination and ar-

gument did not prevent the presentation of any mitigating evidence.

■ We do not approve of the District Attorney's choice of language in his cross-examination and argument, however, in any event, it was harmless. Defense objections to the prosecutor's argument were sustained with an instruction to the jury to disregard the comment regarding the Resource Center. It is presumed the jury followed that instruction. *State v. Barton*, 626 S.W.2d 296, 298 (Tenn.Cr.App.1981). Any improper conduct by the State was a minor part of the witness' cross-examination and only collaterally implicated defendant's right to counsel, if at all. The evidence of aggravating circumstances was overwhelming. It does not appear that any prosecutorial misconduct prejudiced the defendant in the sense that affected the outcome of the trial. Tenn.R.Crim.P. 52(a). Any constitutional error was harmless beyond a reasonable doubt. *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn.1994); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Defendant says Tenn.Code Ann. § 39–2–203(i)(5) (the murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind) is unconstitutionally vague and was unconstitutionally applied in this case. He concedes that the Court has repeatedly rejected vagueness challenges to this section of the statute and asserts the issue is presented for purposes of preserving the issue for later review.

■ Citing *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990), he submits that the definition of "depravity" in *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985), cannot survive constitutional scrutiny absent proof of mutilation. The constitutionality of this aggravating circumstance has been previously upheld in *State v. Barber*, 753 S.W.2d 659, 670 (Tenn.1988). *See also State v. Cazes*, 875 S.W.2d 253, 267 (Tenn.1994); *State v. Black*, 815 S.W.2d 166, 171 (Tenn.1991). In *Williams*, we wrote that

'Torture' means the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious. In proving that such torture oc-

curred, the State, necessarily, also proves that the murder involved depravity of mind of the murderer, because the state of mind of one who willfully inflicts such severe physical or mental pain on the victim is depraved.

\* \* . \* \* \* \*

If acts occurring after the death of the victim are relied upon to show depravity of mind of the murderer, such acts must be shown to have occurred so close to the time of the victim's death, and must have been of such a nature, that the inference can be fairly drawn that the depraved state of mind of the murderer existed at the time the fatal blows were inflicted upon the victim.

690 S.W.2d at 529.

■ When this case was originally considered on direct appeal, this Court commented that the evidence, equivalent to that presented at this sentencing hearing, was clearly sufficient to demonstrate that the murder was especially heinous, atrocious, or cruel. *State v. Hines*, 758 S.W.2d at 523. We continue to agree with this finding. At resentencing, the pathologist testified that the stab wound to the victim's vagina was made around the time of death. The willful insertion of a sharp instrument into the vaginal cavity of a dying woman (or a woman who had just died) satisfies the requirements of *Williams, supra*. If committed prior to death, these acts constitute torture and thereby also support a finding of depravity. If they occurred close in time to the victim's death, they allow the drawing of an inference of the depraved state of mind of the murderer at the time the fatal blows were inflicted on the victim. The defendant also argues that to find that multiple stab wounds and defensive wounds constitute torture, there must be proof that the defendant specifically intended to inflict unnecessary pain and suffering. The evidence of the stab wound to the vagina was sufficient to support a finding that the wounds were intentionally inflicted and that the murder involved torture under *Williams*.

■ Defendant says the acts relied upon to prove depravity of mind were a direct

consequence of his mental disorders. The jury was presented proof of the relationship between defendant's mental and emotional status and the circumstances of the murder. This was a question of weighing aggravating and mitigating circumstances, which was totally and wholly for their consideration. It is nothing more than conjecture on the part of the defendant that the evidence did not support the jury's determination that the statutory aggravating circumstances outweighed the mitigating circumstances.

Defendant raises a blanket assertion that Tenn.Code Ann. §§ 39–2–203 and 39–2–205 violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 8, 9, 16, and 17, and Article II, Section 2 of the Tennessee Constitution, stating his recognition that this Court has previously ruled on most of the issues presented and his purpose for preserving them is for later review. Defendant's argument that the statute fails to meaningfully narrow the class of eligible defendants has been considered many times. *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn. 1992); *State v. Howell,* 868 S.W.2d 238 (Tenn.1993). The issue of unlimited discretion vested in the prosecutor was repudiated in *Gregg v. Georgia,* 428 U.S. 153, 198–200, 224–26, 96 S.Ct. 2909, 2937, 2949, 49 L.Ed.2d 859 (1976). In *State v. Smith,* 857 S.W.2d 1 (Tenn.1993), the Court considered the issues of imposition of the death penalty in a discriminatory manner; lack of uniform standards or procedures for jury selection; prohibition against addressing jurors' "popular misconceptions" about sentencing and parole; instructions regarding unanimity and prohibition against telling jurors what happens if they cannot agree; violations of *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) and *McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) by requiring jury unanimity on life sentence; failure to require the jury to make the ultimate determination that

death is appropriate (a general attack on the whole process, anti-sympathy instructions, etc.). We considered the issue of the death qualification process making the jury "prosecution and guilt prone" in *State v. Teel,* 793 S.W.2d 236, 246 (Tenn.1990). Failure to instruct on meaning and functioning of mitigating circumstances in violation of *Mills* and *McKoy* was dealt with in *State v. Harris,* 839 S.W.2d at 74, as was inadequacy of the appellate review process. The constitutionality of electrocution as a method of inflicting death was dealt with in *State v. Black,* 815 S.W.2d 166, 178–179 (Tenn.1991). Many of these issues have most recently been discussed in *State v. Cazes,* 875 S.W.2d 253 (Tenn.1994); *State v. David Keen,* —— S.W.2d ——, 1994 WL 198625 (Tenn.1994); and *State v. Sylvester Smith,* 893 S.W.2d 908 (Tenn.1995).

Defendant says that the Tenn.Code Ann. § 39–2–203(i)(7) aggravating circumstance should not have been submitted to the jury and the error in doing so could not be considered harmless.[3] The defendant says, and the State concedes, that the submission of that aggravating circumstance violated the holding in *State v. Middlebrooks,* 840 S.W.2d 317 (Tenn.1992).

We have reserved this issue for last because at the oral argument of this case this issue was raised *sua sponte* by the Court. The Court requested that the parties file supplemental briefs.

Briefs have been filed, the State taking the position that the Court should reconsider its decision in *Middlebrooks.* The defendant, on the other hand, asserts that the Court should neither overturn or modify the decision.

A sizeable number of distinguished members of the Tennessee Bar have joined as signatories on a motion to file an *amicus curiae* brief in the case in the interest of the orderly administration of justice and the integrity of the judicial process in Tennessee. This brief has been filed.

---

**3.** The jury found three aggravating circumstances: (1) Tenn.Code Ann. § 39–2–203(i)(2) (The defendant was previously convicted of one or more felonies, other than the present charge, which involve the use or threat of violence to the person); (2) Tenn.Code Ann. § 39–2–203(i)(5) (The murder was especially heinous, atrocious,

or cruel in that it involved torture or depravity of mind); Tenn.Code Ann. § 32–2–203(i)(7) (The murder was committed while the defendant was engaged in committing or was an accomplice in the commission of, or was attempting to commit, or was fleeing after committing or attempting to commit, any robbery, larceny, or rape).

The Court is deeply indebted to counsel for both parties, as well as *amici* for the scholarly, penetrating, and thoughtful briefs submitted. They have been of great assistance to the Court in resolving this issue. However, as *amici* have noted in their brief, "There is no compelling justification for this Court to overrule *Middlebrooks*." *See State v. Bigbee*, 885 S.W.2d 797, 815 (Tenn.1994).

The resolution of the continuing validity of this Court's decision in *Middlebrooks* does not end the matter, however. We observe, first of all, that, although both the State and the defendant are in accord that submission of the felony murder aggravating circumstance to the jury violates *Middlebrooks*, this is only partially true. This defendant was found guilty of felony murder solely on the basis of armed robbery. However, two felonies, larceny and rape, in addition to robbery, were used to support the felony murder circumstance. Furthermore, the felony underlying the conviction in this case is clear, as is the use of the two different and additional felonies to establish the aggravating circumstance found by the jury. *Compare State v. Cazes*, 875 S.W.2d at 270, n. 8. In *Middlebrooks* the felony murder conviction was based on the same felony used to establish the aggravating circumstance set out in Tenn.Code Ann. § 39–2–203(i)(7). The aggravating circumstance in that case therefore duplicated the offense, as broadly defined in § 39–2–202(a), and thus failed to perform the narrowing function required under Article I, Section 16, of the Tennessee Constitution. *See* 840 S.W.2d at 341, 346; *see also State v. Bigbee*, 885 S.W.2d at 816.

■ In *Middlebrooks*, we stated that a proper narrowing device

provides a principled way to distinguish the case in which the death penalty was imposed from the many cases in which it was not ... and must differentiate a death penalty case in an objective, even-handed, and substantially rational way from the many murder cases in which the death

penalty may not be imposed. As a result, a proper narrowing device insures that, even though some defendants who fall within the restricted class of death-eligible defendants manage to avoid the death penalty, those who receive it will be among the worst murderers—those whose crimes are particularly serious, or for which the death penalty is peculiarly appropriate. (Citations omitted.)

840 S.W.2d at 343. Where, as in the instant case, a felony not underlying the felony murder conviction is used to support the felony murder aggravating circumstance, there is no duplication. Furthermore, under these facts the aggravating circumstance as applied restricts the sentencer's discretion to those who kill while in the perpetration of multiple felonies, a class of murderers demonstrably smaller and more blameworthy than the general class of murderers eligible for the death penalty under the previous felony murder statute in Tenn.Code Ann. § 39–2–202(a) (1982).[4] Under these circumstances, where a felony other than that used to prove the substantive offense is used to establish the aggravating circumstance, there is no constitutional prohibition against the use of the aggravating circumstance in § 39–2–203(i)(7) to support the imposition of the death penalty for felony murder.

■ On the premise that error existed because the jury based its finding regarding the felony murder aggravating circumstance in part on the robbery, we conduct a harmless error analysis. In *State v. Cazes, supra* at 269, the Court found harmless error in almost identical circumstances. Citing *State v. Howell*, 868 S.W.2d 238 (Tenn.1993) as authority, the Court said:

In order to guarantee the precision that individualized sentencing considerations demand and provide a principled explanation for our conclusion in each case, it is important when conducting harmless error review to completely examine the record for the presence of factors which potentially influence the sentence ultimately im-

4. We note that the definition of felony murder in Tenn.Code Ann. § 39–2–202(a) was amended in 1989, *see* Tenn.Code Ann. § 39–13–202(a)(2) (1991). This definition in turn has been recently amended by 1995 Tenn.Pub.Acts, Ch. 460. The General Assembly has also recently amended the language of the felony murder aggravating circumstance in Tenn.Code Ann. § 39–13–204(i)(7) (1991) (previously § 39–2–203(i)(7)). *See* 1995 Pub.Acts, Ch. 377.

posed. These include, but are not limited to the number and strength of remaining valid aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality and strength of mitigating evidence.

■ In *Howell, supra* at 261, the Court commented:

In evaluating a jury's consideration of an invalid aggravating factor, it is important to ask whether removal of that factor from the sentencer's consideration also removes any evidence from the jury's total consideration, or whether the State's reliance on the invalid circumstance allowed the jury to improperly consider any evidence. Even though the jury cannot weigh the invalid aggravating factor against any mitigating factors, the jury can properly consider evidence of the circumstances of the crime and the character of the defendant in making an individualized determination of whether the death sentence is justified. *Id.* In that respect, an aggravating factor which duplicates the elements of the underlying crime has less relative tendency to prejudicially affect the sentence imposed than invalid aggravating factors which interject inadmissible evidence into the sentencing calculus, or which require the sentencing jury to draw additional conclusions from the guilt phase evidence.

■ Our examination of the record in this case in accordance with the foregoing analysis demonstrates that submission of the invalid felony murder aggravating circumstance for jury consideration was harmless error beyond a reasonable doubt.

The remaining two aggravating circumstances are fully and strongly supported by the record. The prosecutor's argument made only one insignificant reference to the felony murder aggravator. Defendant's prior conviction of assault was not disputed. The key aggravator was the especially heinous, atrocious, or cruel nature of the offense. The evidence at the hearing, while showing that the defendant took the victim's money bag and car, and raped her, concentrated on the aggravating elements of torture and depravity. The mitigating evidence, while extensive, was much like that presented in *Howell, supra.* Under this record it can be concluded beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid aggravating factor. *State v. Howell, supra* at 262.

■ In accordance with the mandate of Tenn.Code Ann. § 39–2–205(c)(4)(d) (1982), we find that the sentence of death was not imposed in any arbitrary fashion; that the evidence supports the jury's findings of the statutory aggravating circumstances found; and that the evidence supports the jury's finding of the absence of any mitigating circumstances sufficiently substantial to outweigh the aggravating circumstances. Our comparative proportionality review convinces us that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering the nature of the crime and the defendant.[5] Judgment of the trial court is affirmed. The sentence of death will be carried out as provided by law on the 9th day of January, 1996, unless otherwise ordered by this Court, or other proper authorities. Costs of this appeal are adjudged against the defendant.

ANDERSON, C.J., and DROWOTA and BIRCH, JJ., concur.

REID, J., dissents.

REID, Justice, dissenting.

I dissent from the majority opinion and would modify the defendant's punishment to life imprisonment. First, I would hold that the trial court acted beyond its authority when it rejected the State's decision to impose a life sentence and compelled the State to seek the death penalty. Second, I find that the failure of the trial court to grant a

---

5. See *State v. Sylvester Smith*, 893 S.W.2d 908 (Tenn.1995); *State v. Brimmer*, 876 S.W.2d 75 (Tenn.1994) (murder to steal vehicle); *State v. Cazes*, 875 S.W.2d 253 (Tenn.1994); *State v. Alley*, 776 S.W.2d 506 (Tenn.1989); *State v. Poe*, 755 S.W.2d 41 (Tenn1988) (similar brutal murder); *State v. Carter*, 714 S.W.2d 241 (Tenn.1986) (murder to steal car); *State v. O'Guinn*, 709 S.W.2d 561 (Tenn.1986); *State v. Zagorski*, 701 S.W.2d 808 (Tenn.1985) (murder to steal money).

continuance when the State did not file timely notice of its intent to seek the death penalty precludes imposition of that penalty.

The record indicates that prior to trial the defendant and the State engaged in plea negotiations during which the parties agreed that the defendant would receive a life sentence in this case and would plead guilty to charges in a different case for which he would receive a second, consecutive life sentence. When the agreement was presented to the trial court, the court adamantly refused to approve it.

> Well, obviously, I presided at the prior trial, and I know what the facts of this case are, and I reject the plea bargain. I think that this is a case that ought to be decided by a jury, and I do not think it in the interest of justice to allow the plea bargain in this case, and I reject it.
>
>    \*     \*     \*     \*     \*     \*
>
> From the facts of the commission of the crime, I am of the opinion that this case meets the criteria for imposition of the death penalty. I think that the manner in which the deceased was treated was especially heinous, atrocious, and cruel—now, I did not define that to the last jury, but I felt like that our statute then goes on to define it—"in that it involves torture or depravity of mind." And then I also take the Potter Stewart approach in that situation, that even though the jury may not have known the legal definition of those terms, "I know it when I see it," and this is, certainly, a particularly heinous and brutal crime. And I think that it is one in which the citizens of this county should consider the imposition of the death penalty in, and that is the reason for my rejection of the plea bargain.

Under the system adopted in the State of Tennessee, it is left to the discretion of the district attorney general whether to seek the death penalty in a case of first degree murder. *See* Tenn.R.Crim.P. 12.3(b); *see also State v. Bigbee,* 885 S.W.2d 797, 817 (Tenn. 1994); *State v. Nichols,* 877 S.W.2d 722, 736 (Tenn.1994); *State v. Brimmer,* 876 S.W.2d 75, 86 (Tenn.1994); *State v. Cazes,* 875 S.W.2d 253, 268 (Tenn.1994); *Cooper v. State,* 847 S.W.2d 521, 536 (Tenn.Crim.App.

1992). The decision of the district attorney general in this case, although couched in the language of a plea bargain agreement, was an explicit exercise of his discretion not to seek the death penalty, operating as a withdrawal of the prior notice of intent to seek that punishment. It was beyond the authority granted the trial court to restrict this determination. Yet, as the words of the court quoted above show, the trial court assumed for itself the prerogative reserved to the district attorney general to determine whether the law, the facts and the public good require that the case be prosecuted as a capital offense. The court clearly was acting outside its authority. Inasmuch as the district attorney general had elected not to seek the death penalty, the court was constrained to accept that determination and enter a sentence of life imprisonment.

The majority finds that the trial judge has the authority under Tenn.R.Crim.P. 11(e)(2) to reject the plea agreement. This case is not controlled by that rule. The court's rejection of the agreement left only one choice for the State—to seek the death penalty. Permitting the court to restrict the district attorney's decision under these circumstances subverts the authority of the district attorney general to decide whether the State will seek the death penalty. For these reasons, I would hold that the trial court erred in refusing to accept the State's decision not to seek the death penalty and would modify the sentence to life imprisonment. *See* Tenn. Code Ann. § 39–13–206(d)(2).

Additionally, the sentence in this case must be modified to life imprisonment because of the violation of the mandatory provisions of Tenn.R.Crim.P. 12.3(b). This rule requires that, when a capital offense is charged and the district attorney general intends to ask for the death penalty,

> written notice thereof *shall* be filed not less than thirty (30) days prior to trial. If the notice is filed later than this time, the trial judge *shall* grant the defendant upon his motion a reasonable continuance of the trial. (Emphasis supplied.)

In the present case, the defendant filed two motions asking the State to provide written

notice of its intent to seek the death penalty and of the aggravating circumstances upon which it would rely at resentencing. The State did not respond to these motions until the week before trial. The defendant then filed a motion for a continuance based in part on the State's failure to give timely notice under Rule 12.3(b).

The majority opinion finds that a continuance was not required because the original notice filed by the State before the first trial provided the defendant with sufficient notice to satisfy the Rule's requirements. However, Tenn.Code Ann. § 39–13–204(k) (Supp. 1990) [formerly Tenn.Code Ann. § 39–2–203(k) ] provides that

> [i]n the event that the trial court, or any other court with jurisdiction to do so, orders that a defendant convicted of first degree murder ... be granted a new trial, either as to guilt or punishment or both, the new trial shall include the possible punishments of death or life imprisonment.

This statute indicates that upon resentencing the General Assembly intended that the State and the defendant return to the positions they occupied before the first trial or sentencing hearing. All possible punishments are once again available to the State. A defendant is, likewise, no longer on notice of any particular intent on the part of the State regarding the penalty. Under these circumstances notice under the guidelines of Rule 12.3(b) is as necessary at resentencing as at the original trial.

The facts of this case illustrate this necessity. The jury at the first sentencing hearing had rejected one of the four aggravating circumstances presented by the prosecution. The defendant was at a loss as to whether the State would continue to rely on that circumstance or whether it might seek to present new circumstances. Without notice, he was forced to prepare his defense without certain knowledge of the aggravating circumstances he would have to rebut or challenge. The requirements of Rule 12.3 were intended to alleviate such uncertainty. *See* Tenn. R.Crim.P. 12.3 Advisory Commission Comments. The holding of the majority, howev-

er, deprives a defendant of these procedural protections at resentencing. Furthermore, in a case such as this one, where the State has led the defendant to believe that it will not seek the death penalty by agreeing to a sentence of life, notice of the State's intent becomes critical. To avoid misleading the defendant, the State should be required to file a notice of its intent under Rule 12.3(b) before it may proceed to seek the death penalty on a resentencing hearing.

Rule 12.3(b) mandates that notice of the State's intent to seek the death penalty specifying the aggravating circumstances upon which the State will rely be given not less than thirty days before trial. If the State fails to perform this duty, "the trial judge *shall grant the defendant upon his motion a reasonable continuance of the trial.*" (Emphasis supplied.) As this Court wrote concerning a parallel situation under Rule 12.3(a), "It is academic that the use of the word 'shall' in a statute is indicative of a mandatory legislative intent." *State v. Lowe,* 811 S.W.2d 526, 527 (Tenn.1991). In *Lowe,* the Court found that the trial court's refusal to sustain the defendant's motion for a continuance, pursuant to Tenn.R.Crim.Proc. 12.3(a), required that the notice of enhancement be stricken, that the sentence be vacated and that the defendant be resentenced as if the notice had not been filed. Nothing in the present case suggests that we should depart from this remedy.

The majority decision on notice is not clear. The decision only finds that the procedure followed in this case was not reversible error. It saves the sentence. Reasonable questions regarding notice on rehearing, previously settled, are now unanswered: Is notice required? If so, how much notice is required? What aggravating circumstances must be included in the notice? Is a showing of prejudice a condition for relief where the State has not given notice as required by the rule? Is the holding abandoning the principles of *State v. Lowe?*

I would modify the defendant's sentence to life in accord with *State v. Lowe.*[1]

---

1. In its opinion, the majority relies upon the case of *State v. Stephenson,* 752 S.W.2d 80, 81 (Tenn.

1988), for the proposition that the failure to file timely notice does not render the notice ineffec-

## OPINION ON PETITION TO REHEAR

O'BRIEN, Special Justice.

A petition to rehear has been filed on behalf of the defendant-appellant, Anthony Darrell Dugard Hines. After consideration of the same, a majority of the Court is of the opinion that the petition should be granted to address the first issue presented.

In Issue One, the defendant contends that the trial court's instruction to the jury regarding the aggravating circumstance in T.C.A. § 39–2–203(i) (1982)[1] was unconstitutional and that the trial court committed constitutional error in its definition of the term "depravity". The defendant first asserts that federal courts have recently held that instructions given by the trial courts of this state regarding circumstance (i)(5) violate the Eighth Amendment to the United States Constitution. We note, however, that in the two cases cited by the defendant, *Houston v. Dutton*, 50 F.3d 381 (6th Cir. 1995), and *Rickman v. Dutton*, 854 F.Supp. 1305 (M.D.Tenn.1994), the trials were conducted prior to the release of *State v. Williams*, 690 S.W.2d 517 (Tenn.1985), and the sentencing juries were therefore instructed in the bare language of the statute without the limiting definitions adopted by this Court in *Williams*. In the present case the trial court instructed the jury in accord with *Williams*.

The defendant next contends that the instructions given regarding "depravity" were constitutionally insufficient. He notes Justice Stevens' opinion on the denial of the writ of certiorari in *Barber v. Tennessee*, —— U.S. ——, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995), stating that the definition of "depravity" as "wicked or morally corrupt" in that case was "plainly impermissible" under *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), and *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In the defendant's case the trial court instructed the jury that "depravity means moral corruption; wicked or perverse act."

■■■ While we continue to abide by our original holding that this aggravating circumstance has been constitutionally applied under the circumstances of this case and is not unconstitutionally vague, we write to clarify that, even if the instructions given by the trial judge were unconstitutional under *Godfrey* and *Maynard*, the failure to give a constitutionally proper instruction on depravity was harmless error beyond a reasonable doubt. In our earlier opinion in this case, we noted that under *Williams*, 690 S.W.2d at 529, "torture" means "the infliction of severe physical or mental pain upon the victim while he or she remains alive and conscious." Likewise, "depravity" is inherent in the state of mind of a murderer who willfully inflicts such severe physical or mental pain on a victim prior to death or at a time very close to that of the victim's death. *Id.* The facts of this case fully satisfy these definitions of "torture" and "depravity". Based upon our earlier analysis of the facts relevant to this aggravating circumstance, *see* Opinion at pp. 581–582, we find beyond a reasonable doubt that, if there was constitutional error in the instruction on depravity in this case, the result would have been the same had this aggravating circumstance been properly instructed under the above definitions from *Williams*. *See Clemons v. Mississippi*, 494 U.S. 738, 754, 110 S.Ct. 1441, 1451, 108 L.Ed.2d 725 (1990). Furthermore, it is clear that any unconstitutional vagueness in the instruction concerning "depravity" was harmless beyond a reasonable doubt because, as review of the record establishes, this aggravating circumstance was sufficiently proved by evidence of torture[2] independent of depravity. *See* Opinion at pp. 581–582. *Com-*

---

tive in the absence of a showing of prejudice to the defendant. *Stephenson*, however, involved a case where the defendant *had not* requested a continuance and was specifically distinguished in *Lowe* on that ground.

1. T.C.A. § 39–2–203(i)(5) (1982) provided that the death penalty could be imposed where "the murder was especially heinous, atrocious, or cru-

el in that it involved torture or depravity of mind."

2. The trial court instructed the jury in accord with *Williams* that "torture" means "the infliction of severe physical or mental pain upon the victim while he or she remains alive or conscious."

pare *State v. Van Tran*, 864 S.W.2d 465, 478–480 (Tenn.1993). We are therefore convinced beyond a reasonable doubt that removal of depravity as a basis for establishing aggravating circumstance (i)(5) would have made no difference in the defendant's sentence.

Last, the defendant argues that the failure of the trial court to define torture as the intentional infliction of unnecessary pain and suffering violated the Eighth Amendment. He relies upon the case of *Wade v. Calderon*, 29 F.3d 1312, 1320 (9th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995). Without accepting the defendant's argument that such an instruction is constitutionally mandated, we note that in our opinion in this case we held that "evidence of the stab wound to the vagina was sufficient to support a finding that the wounds were intentionally inflicted," Opinion at p. 581, so that, if it was error not to instruct the jury that torture must be intentionally inflicted, such error was harmless beyond a reasonable doubt in the instant case.

Accordingly, we find without merit the challenges presented in defendant's petition to rehear regarding the constitutionality of the application of aggravating circumstance (i)(5) in this case. The petition to rehear is denied.

The sentence of death, having been heretofore stayed, will be carried out as provided by law on the first day of June, 1996, unless otherwise ordered by this Court, or other proper authorities. Costs on this appeal are adjudged against defendant.

ANDERSON, C.J., and DROWOTA, J., concur.

REID, J., dissents.

### DISSENTING OPINION ON PETITION TO REHEAR

REID, Justice.

I dissent from the majority opinion on the defendant's petition to rehear. I would hold that the aggravating circumstance set forth in Tenn.Code Ann. § 39–2–203(i)(5) (1982) is invalid as an aggravating circumstance in this case.

For the reasons discussed in *State v. Black*, 815 S.W.2d 166, 195–97 (Tenn.1991) (Reid, C.J., dissenting), circumstance (i)(5), ("[t]he murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind"), prior to the 1989 amendment, is unconstitutionally vague. Even as defined in *State v. Williams*, 690 S.W.2d 517, 529–30 (Tenn.1985), the use of "depravity," as an aggravating circumstance violates both the state and federal constitutions and requires that the sentence be vacated. See *State v. Black; State v. Van Tran*, 864 S.W.2d 465, 485–90 (Tenn.1993) (Daughtrey, J., dissenting); *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) (*per curiam;* Marshall, J., concurring).

In the present case, the jury was instructed that "depravity" means "moral corruption; wicked or perverse act." In denying certiorari in the case of *Barber v. Tennessee*, —— U.S. ——, 115 S.Ct. 1177, 130 L.Ed.2d 1129 (1995), Justice Stevens found that the definition of "depravity" as "wicked or morally corrupt" was "plainly impermissible" under the Court's holdings in *Godfrey v. Georgia*, 446 U.S. 420, 428–29, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980), and *Maynard v. Cartwright*, 486 U.S. 356, 363–64, 108 S.Ct. 1853, 1858–59, 100 L.Ed.2d 372 (1988). While acknowledging this authority, the majority nevertheless concludes that "any unconstitutional vagueness in the instruction concerning 'depravity' was harmless beyond a reasonable doubt because, as review of the record establishes, this aggravating circumstance was sufficiently proved by evidence of torture independent of depravity." The majority, then, relies upon torture, not "depravity." The evidence clearly is not sufficient to support a finding of torture.

In *State v. Williams*, the Court held that " '[t]orture' means the infliction of severe physical or mental pain upon the victim while he or she remains alive *and conscious*." 690 S.W.2d at 529 (emphasis added). In the present case, the cause of death was multiple stab wounds to the chest. There was also a later stab wound to the victim's vagina; however, the conviction cannot rest upon this

injury to the victim because there is no evidence in the record that she was alive and conscious when that wound was inflicted. The evidence supports a finding of mutilation of a corpse as well as it supports torture of a human being.

At resentencing, the medical examiner, Dr. Charles Harlan, testified that the wound to the vaginal area was a "perimortem injury; that is, it occurred at approximately the time of death, either slightly before, during, or slightly after." According to Dr. Harlan, "Death would have occurred within a few minutes after infliction of the wounds to the chest, and probably would have been in the range of four to five minutes, possibly as much as six minutes," but the victim would have remained conscious only for "probably three to four minutes" after receiving the chest wounds. Dr. Harlan agreed that the vaginal wound "could have just as easily occurred after the loss of consciousness or death, as before." Thus, there was not sufficient proof for the jury to conclude beyond a reasonable doubt that the victim was conscious at the time the wound to the vaginal area was inflicted. This evidence might be sufficiently close in time to support "depravity" but not torture.

Since, in my view, the instruction regarding "depravity" is constitutionally deficient, as acknowledged by the majority, and the aggravating circumstance (i)(5) was not proved by evidence of torture, I cannot agree with the majority's conclusion that the unconstitutionally vague definition of depravity was harmless error. That conclusion is a bald assertion without a principled explanation. *Sochor v. Florida*, 504 U.S. 527, 541, 112 S.Ct. 2114, 2123, 119 L.Ed.2d 326 (1992) (O'Connor, J., concurring). On this issue, I would remand for resentencing under a proper (i)(5) instruction. *See State v. Black*, 815 S.W.2d at 196–97 (Reid, C.J., dissenting). For the reasons stated in my earlier dissent, I would impose a sentence of life imprisonment.