IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 20, 2011 Session

## GILBERT OLERUD, ET AL. v. DR. WALTER M. MORGAN, III, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 07C2101    Barbara N. Haynes, Judge**

_____

**No. M2010-01248-COA-R3-CV - Filed February 18, 2011**

_____

This is an appeal of a grant of summary judgment to a hospital and physician in a medical malpractice case. Plaintiffs also appeal the denial of their motion that the trial court recuse itself due to the court's membership on the board of directors of the defendant hospital and the court's denial of their motion for default judgment based on spoliation of evidence. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and ANDY D. BENNETT, J., joined.

William K. Burger, Murfreesboro, Tennessee, for the appellants, Gilbert Olerud and Annette Rae Olerud.

Anna M. Grizzle and David A. King, Nashville, Tennessee, for the appellees, Dr. Walter M. Morgan, III and Vanderbilt University Medical Center.

### OPINION

Plaintiffs, Gilbert and Annette Olerud, filed suit pursuant to Tenn. Code Ann. § 29-26-115 against Dr. Walter Morgan and The Vanderbilt University seeking to recover for the death of their daughter, Rachel. The complaint alleged that Rachel's regular pediatrician had become concerned about some lumps in the vicinity of Rachel's lymph nodes and had referred Rachel to Dr. Morgan, a pediatric surgery specialist associated with Vanderbilt University Medical Center and Vanderbilt Children's Hospital, for evaluation. The complaint further alleged that Dr. Morgan deviated from the prevailing standard of medical care by failing to obtain a biopsy evaluation of the lumps and, as a consequence, failing to

identify and secure the early treatment of a form of cancer which ultimately led to Rachel's death.

With respect to defendant Vanderbilt, the complaint alleged as follows:

At all times pertinent to the allegations set forth above regarding the breach of the standard of care by Dr. Morgan, it is asserted that Dr. Morgan was acting as an agent of the Defendant Vanderbilt Medical Center and its subsidiary, Vanderbilt Children's Hospital, through his participation in a professional association known as "Pediatric Surgical Associates." Based upon the relationship of respondeat superior, it is asserted that Pediatric Surgical Associates, as a separate business entity, and Vanderbilt Medical Center, are jointly and severally responsible for the acts of negligence described above.

Following discovery, defendants filed a motion for summary judgment, contending that the applicable standard of care had not been breached and that plaintiffs had not provided sufficient admissible expert proof establishing that defendants' conduct was the proximate cause of any injury to Rachel Olerud. In response, plaintiffs filed affidavits of two expert witnesses; the trial court denied the motion for summary judgment.

Plaintiffs filed a motion seeking a default judgment against the defendants based on the loss of the record of Rachel's first visit to Dr. Morgan.[1] Plaintiffs asserted that the loss of the record was a violation of Tennessee law and amounted to spoliation, which prejudicially impeded their ability to address the causation issue in the case. Defendants opposed the motion, asserting that there was no evidence that the absence of the record was the result of intentional conduct or bad faith; they also asserted that the absence of the record did not prejudice plaintiffs' case. The trial court denied plaintiffs' motion.

Defendants thereafter renewed their motion for summary judgment,[2] filing evidentiary and discovery depositions of plaintiffs' experts as well as affidavits of other physicians and persons with record-keeping responsibilities at Vanderbilt University and Vanderbilt University Medical Center. Plaintiffs responded to the renewed motion and, following a hearing, the court granted the motion, finding that the "locality rule" at Tenn. Code Ann. §

---

[1] The motion is not included in the record on appeal; however, defendants' opposition to the motion and the court's order denying the motion are included.

[2] The order initially entered on defendants' motion for summary judgment stated that the motion "is not well taken at this time and should be denied."

29-26-115(b) barred one of plaintiffs' expert witnesses from testifying as an expert and finding both of plaintiffs' experts' opinions unreliable under Tenn. R. Evid. 703.

Plaintiffs thereafter filed a Motion for Recusal and Motion to Alter or Amend, contending that the order granting summary judgment was inconsistent with the holding of the Court in the prior order denying summary judgment to defendants. Plaintiffs based their request that the court recuse itself on the fact, discovered subsequent to the grant of summary judgment to defendants, that the trial court judge was a voting member of the Board of Directors of Vanderbilt Children's Hospital. The trial court denied both motions.

Plaintiffs raise six issues on appeal, including whether the trial court abused its discretion in denying the motion to recuse. We answer this question in the affirmative and vacate the prior orders of the court; consequently the other issues raised are pretermitted.

## DISCUSSION

The importance of impartiality of a court, as well as the standard to be applied where a request for recusal is based on actual or perceived impartiality, has been succinctly stated as follows:

> Litigants, as the courts have often said, are entitled to the "cold neutrality of an impartial court." *Kinard v. Kinard*, 986 S.W.2d 220, 227 (Tenn. Ct. App. 1998). Thus, one of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges. *Id.* at 228. Indeed, "it goes without saying that a trial before a biased or prejudiced fact finder is a denial of due process." *Wilson v. Wilson,* 987 S.W.2d 555, 562 (Tenn. Ct. App. 1998). Accordingly, judges must conduct themselves "at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "shall not be swayed by partisan interests, public clamor, or fear of criticism." Tenn. Sup. Ct. R. 10, Cannon 2(A), 3(B)(2). As we said many years ago, "it is of immense importance, not only that justice be administered . . . but that [the public] shall have no sound reason for supposing that it is not administered." *In re Cameron,* 126 Tenn. 614, 151 S.W. 64, 76 (1912). If the public is to maintain confidence in the judiciary, cases must be tried by unprejudiced and unbiased judges.

> Given the importance of impartiality, both in fact and appearance, decisions concerning whether recusal is warranted are addressed to the judge's discretion, which will not be reversed on appeal unless a clear abuse appears on the face of the record. *See State v. Hines,* 919 S.W.2d 573, 578 (Tenn.

1995). A motion to recuse should be granted if the judge has any doubt as to his or her ability to preside impartially in the case. *See id.* at 578. However, because perception is important, recusal is also appropriate "when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Alley v. State,* 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if "the judge's impartiality might reasonably be questioned." Tenn. Sup. Ct. R. 10, Canon 3(E)(1). Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. *See Alley,* 882 S.W.2d at 820.

*Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564–65 (Tenn. 2001).

In support of the motion to recuse, plaintiffs filed information from the Vanderbilt Medical Center and Vanderbilt Children's Hospital websites which included the trial court's affiliation as a voting member of the Board of Directors of the Children's Hospital[3] and as a lifetime member of the Friends of Children's Hospital as well as being the recipient of an award from Children's Hospital. Plaintiffs also included an excerpt from Dr. Morgan's deposition wherein he affirms that the pediatric surgery group is not a separate legal entity and that the members of the group are employees of Vanderbilt Medical Center. Lastly, Ms. Olerud filed a lengthy affidavit, *inter alia,* recounting her discovery of the information and stating:

> For obvious reasons, I am concerned that Judge Haynes cannot be impartial and unbiased in deciding a case for a Defendant hospital which relies upon her judgment and assistance in determining its policies and its welfare. . . . Knowing that Dr. Morgan is an employee of Vanderbilt (as he states in his deposition), I honestly do not see how she can fairly decide the issues in our case, as a member of the Board of Directors for the Defendant.

---

[3] The function of the Board of Directors was defined as follows:

Developed in 1975, the Board of Directors are advocates, fundraisers and advisors for Children's Hospital. The Board of Directors is advisory to the Medical Center Board, the Vice Chancellor for Health Affairs and the Board of Trust on all matters relating to the needs and care of children within Vanderbilt University Medical Center. The Board of Directors assists the Medical Center Board in developing a Children's Hospital of the highest quality and in generating community support.

In response to plaintiffs' motion, defendants filed the affidavit of Dr. Kevin Churchwell, Chief Executive Officer and Executive Director of Vanderbilt Children's Hospital, wherein he states that the Board of Trust of Vanderbilt University, rather than the Board of Directors of Vanderbilt Children's Hospital (referred to in the affidavit as the "Children's Board") governs the hospital; that the Children's Board is not involved in the day-to-day operation or the development of clinical or business policies of the hospital; and that the Children's Board is not notified of claims made against the hospital or its employees and has no involvement in the evaluation or defense of any such claims. The court recited the matters in Dr. Churchwell's affidavit in the order denying the motion to recuse, holding that "there is no basis for the Court to recuse itself in this matter."

We do not deal in this case with allegations that, through some comments or action, the court has actually exhibited bias or prejudice. Rather, we consider whether it is objectively reasonable for these plaintiffs to not have confidence that a member of the board of directors of the hospital whom they contend is responsible for the loss of their child can impartially consider all issues in their case against the hospital. Applying an objective standard, we believe that the court's impartiality might reasonably be questioned under the circumstances presented. We do not hold that the court was partial or biased.

The record shows that the court's membership on the board was discovered by Ms. Olerud after the court entered critical rulings in the case, including denying plaintiff's motion relative to the loss of the record of Rachel's first visit to Dr. Morgan and granting summary judgment to defendants. The disposition of both motions called for the court, in some degree, to make credibility determinations. The absence of the record was asserted by plaintiffs to prejudice their ability to prove causation and, as a consequence, they should be granted a default judgment against defendants; in response defendants filed the affidavit of Dr. Morgan's assistant who had unsuccessfully attempted to retrieve the note. Defendants contended, *inter alia*, that the absence of the record was not a result of intentional conduct or bad faith. In the case of the renewed summary judgment motion, the court ruled inadmissible expert opinions which it had allowed in overruling the previous motion[4]; plaintiffs contended in the motion to alter or amend that the court's grant of summary judgment was "inexplicably inconsistent" which "cannot be reconciled" with the court's prior order overruling the motion for summary judgment.

Under the circumstances of this case and with these particular rulings in mind, we find a reasonable basis for Ms. Olerud to question the court's ability to be impartial and unbiased. Consistent with the advisory comments to Canon 3E of the Code of Judicial Conduct, the

---

[4] The court held that the facts and data underlying the standard of care and causation opinions of plaintiffs' experts indicated a lack of trustworthiness within the meaning of Tenn. R. Evid. 703.

court should have disclosed its affiliation with the board of the hospital and allowed the parties to determine what, if any, relevance to attach to the court's affiliation.[5] We find that the order denying the motion to recuse should be reversed and the prior orders of the court in this case vacated. The case is remanded for further proceedings in accordance with this opinion. On remand, the case is to be referred to the presiding judge for reassignment.

## CONCLUSION

For the reasons stated above, we reverse the order of the court denying the motion to recuse and vacate the prior orders of the trial court.

_____
RICHARD H. DINKINS, JUDGE

---

[5] The Commentary to Canon 3E states, in part:

A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification.