IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 11, 2019

**STATE OF TENNESSEE V. GREGG T. MERRILEES**

**Appeal from the Circuit Court for Rutherford County**
No. 77445C          David M. Bragg, Judge

_____

**No. M2019-01194-CCA-R3-CD**

_____

Gregg T. Merrilees, Defendant, was indicted for aggravated robbery, robbery in concert with two or more persons, and especially aggravated kidnapping. The week prior to trial, the State moved to amend count one to change the theory by which it would prove aggravated robbery. Defendant filed a response stating that he did not consent to amendment and requesting a continuance if the trial court granted the motion to amend. The trial court granted the State's motion to amend and denied Defendant's motion to continue. The same week, Defendant moved for a second continuance so that he could employ private counsel rather than appointed counsel, and the trial court denied the motion. Prior to the jury panel being sworn, the trial court issued preliminary jury instructions. Defendant was convicted of aggravated robbery in count one and robbery in concert with two or more persons in count two. He was acquitted of the especially aggravating kidnapping in count three. The trial court merged counts one and two and sentenced Defendant to serve eight years in the Tennessee Department of Correction. On appeal, Defendant argues that the trial court erred by amending the indictment without also granting Defendant a continuance, by denying Defendant's motion to continue so he could employ private counsel, and by issuing preliminary jury instructions prior to the jury panel being sworn. Defendant also argues that cumulative error requires the granting of a new trial. After a thorough review of the record and applicable case law, we affirm the judgments of the circuit court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

David L. Clarke, Murfreesboro, Tennessee, for the appellant, Gregg T. Merrilees.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Dana Minor and Matthew Westmoreland, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## Factual and Procedural History

*Pretrial Hearings*

On August 7, 2018, the trial court heard a motion from the State to amend the indictment. The original language of count one of the indictment stated that Defendant "did unlawfully and knowingly take property from [the victim] by inflicting serious bodily injury on the victim, in violation of T[ennessee] C[ode] A[nnotated section] 39-13-402." The State moved to amend count one to read:

[Defendant] did unlawfully and knowingly obtain or exercise control over property owned by [the victim] without the owner's effective consent, that [D]efendant intended to deprive the owner of the property, that [D]efendant took such property from the person by the use of violence or by putting the person in fear, that [D]efendant took such property intentionally or knowingly, and that [D]efendant accomplished this act with a deadly weapon or by display of any article used or fashioned to lead the alleged victim to reasonably believe it to be a deadly weapon, in violation of T[ennessee] C[ode] A[nnotated section] 39-13-402.

The original language of count two of the indictment read that Defendant "did unlawfully and knowingly, take property from [the victim] by violence or putting the [victim] in fear, while acting in concert with two or more other persons, in violation of T[ennessee] C[ode] A[nnotated section] 39-13-401." The State moved to amend count two to read:

[Defendant did] unlawfully and knowingly obtain or exercise control over property owned by [the victim] without the owner's effective consent, that [D]efendant intended to deprive the owner of the property, that [D]efendant took such property from the person by the use of violence or by putting the person in fear, that [D]efendant took such property intentionally or knowingly, and that [D]efendant committed the offense while acting in

- 2 -

concert with two (2) or more other persons,[1] in violation of T[ennessee] C[ode] A[nnotated section] 39-13-401.

The State did not move to amend the original language of count three, which read that Defendant

> did unlawfully and knowingly remove or confine [the victim] so as to substantially interfere with [the victim's] liberty and was accomplished with a deadly weapon or by display of any article used or fashioned to lead the [victim] to reasonably believe it to be a deadly weapon, in violation of T[ennessee] C[ode] A[nnotated section] 39-13-305.

The State argued that its "main issue [was] changing the theory [by] which the aggravated robbery occurred." Defense counsel agreed that, under Tennessee Rule of Criminal Procedure 7, the court could amend the indictment without Defendant's consent "as long as there is not a substantial right of [D]efendant that's prejudiced." However, defense counsel argued that the proposed amendment of count one would prejudice Defendant's ability to properly prepare for trial. Defense counsel requested that the trial court deny the State's motion to amend count one, or in the alternative, grant the State's motion to amend but also grant Defendant a continuance "to give [counsel] more time to prepare."[2] Defense counsel stated,

> [The amendment of count one] doesn't affect the entirety of my theory. My main theory is that in the video in this crime, it clearly shows the two [c]o-[d]efendants, does not show my client. My main theory is my client was not involved in it. Secondary to that, though, would have been that there is no serious bodily injury. So, it certainly affects part of the trial, not the entirety of my theory. I'm not going to misrepresent that to the [c]ourt. However, it does affect my theory. And for that reason, I would ask for a continuance just to give us time to be able to attack the new charge of a deadly weapon versus the bodily injury.

The State responded that in count three, the indictment "alleged the proper theory, which is the weapon." Thus, the State argued, Defendant already had notice that he would have to defend against that theory.

---

[1] The State also moved to amend the indictment to remove the co-defendants and name Defendant as the only person charged in the indictment.

[2] Defense counsel did not oppose the State's motion to amend count two.

The trial court granted the State's motion to amend and denied Defendant's motion to continue. The court found "that the use of the same language in [c]ounts [two] and [three] about taking by fear and by use of a deadly weapon provided adequate notice to [D]efendant of what he was being charged with . . . to prevent surprise or to deny him the opportunity to make preparation."

On Friday, August 10, 2018, the trial court conducted another pretrial hearing. Defendant had hired private counsel, Nathan Cate, who had filed a notice of limited appearance.[3] Mr. Cate asked for a continuance since he had only been recently retained and because the trial was set for the following Monday, August 13, 2018. He said, "[I]f your honor will grant a continuance on that trial, I would be taking over as [c]ounsel. But, of course, if it remains set Monday, there is no way I'm going to take over the case. I believe this is the first trial setting." The State responded that it "oppose[d] the motion" because they were "ready to go on Monday." In response, Mr. Cate stated that the indictment had been amended only three days prior and argued that, under Tennessee Code Annotated section 40-14-105, a defendant must be given a minimum fourteen-day continuance after the amendment of an indictment. Mr. Cate then requested sixty days "to adequately prepare."

The trial court noted that Tennessee Code Annotated section 40-14-105 "applie[d] to new indictments." The trial court also stated that there was "no indication that the representation" by appointed counsel was "ineffective, inadequate, or [fell] below the range of competency expected of [d]efense [c]ounsel in criminal prosecutions" and "no proof or allegation that the accused and his appointed [c]ounsel have become embroiled in any irreconcilable conflict" or "that there's been any breakdown in communications between them." The trial court said that "[t]here was no indication" that Defendant "was in any way unsatisfied or disappointed or had any anticipation that he would need to retain other [c]ounsel." The trial court then stated that Mr. Cate could sit as "second chair" to appointed counsel but denied the motion to continue.

*Trial*

Seating of the Jury and Preliminary Jury Instructions

On August 13, 2018, Defendant's trial began. Prior to the jury panel being seated and sworn, the trial court instructed the jury venire, stating:

---

[3] The record does not include this limited notice of appearance. The only reference to a date on which it may have been filed was when Mr. Cate said, at the August 10 pretrial hearing, that Defendant's family "was only able to make arrangements with me this week."

Ladies and [g]entlemen, while [c]ounsel are going through the challenge process, the [c]ourt is going to provide you with some of the preliminary jury instructions that apply to just about every case that's heard in this courtroom. I would ask that all of you who are here for jury duty listen carefully, because you may find yourself in our jury. And as such, you'll need to be aware of these instructions.

. . . .

Throughout the trial, I'll be giving the jury more detailed instructions on how they are to go about reaching a decision. But now I simply want to explain how the trial will proceed. [D]efendant has been charged by the State of Tennessee with violations of [s]tate law. The document containing the charge is referred to as an indictment. An indictment is the formal accusation charging [D]efendant with a crime. It is not evidence of anything. If I ask you to step down, I would ask that you have a seat in the courtroom until I get finished selecting the jury.

The trial court then excused two jurors. It continued:

[D]efendant in this case is charged with aggravated robbery, robbery in concert with two or more persons, and especially aggravated kidnapping. [D]efendant has pled not guilty to these charges. And he is presumed innocent, and may not be found guilty by you unless after hearing all the evidence in the case, my instructions about the law, and the attorneys' arguments the [twelve] jurors seated in this case unanimously find the State has proven its case beyond a reasonable doubt. The first step in the trial will be the attorneys' opening statements. The State will tell you about the evidence it intends to present so that you'll have an idea about what the State's case is about. The opening statement is not evidence. [Its] only purpose is to help you understand what the evidence will be and what the State will attempt to prove.

After the State's opening statement, the attorney for the [d]efense may make an opening statement, if he should so choose. Again, statements of attorneys are not evidence. Next will be the State's case in chief in which the State will present its evidence. The evidence in the case will most likely consist of physical exhibits, documents, and the testimony of witnesses. The witnesses will testify by answering questions asked by the attorneys.

After the State completes its case in chief, the [d]efense will be given an opportunity to present evidence through witnesses and exhibits. Ladies and [g]entlemen, let me move a couple more people.

The trial court seated two more jurors from the jury venire. It continued:

Now, I just told you that after the State presents its case in chief, the [d]efense will have an opportunity to present evidence, if it should so choose. A defendant is not required to put on any evidence or to testify. The burden is always on the State to convince you that [D]efendant is guilty beyond a reasonable doubt. If the [d]efense does present proof, the State may then put on what is known as rebuttal proof. After the State's rebuttal, the [d]efense may put on further proof.

After you have heard all the evidence, the State and the [d]efense may present final arguments. I have previously told you that opening statements by attorneys are not evidence. Likewise, closing arguments are not evidence. In closing arguments, the parties will attempt to summarize their cases and help you understand the evidence that was presented.

Throughout the trial, I will instruct you about the rules of law you are to use in reaching your verdict. The law applicable to this case is stated in these instructions. And it is your duty to carefully consider all of them. The order in which these instructions are given is no indication of their relative importance. You should not single out any one or more of them to the exclusion of another or others. But you should consider each one in light of and in harmony with the others.

The trial court then excused two jurors, seated a new juror from the venire, and moved one seated juror to a different chair. It continued:

I just told you that throughout the trial I'll be giving you instructions on the law. You will also receive a copy of these instructions to use during your deliberations. And you should not single out any one or more of the instructions to the exclusion of another. But you should consider each instruction in light of and in harmony with the others.

After you hear my final instructions, I will excuse the alternate jurors. And the final [twelve] jurors will leave the courtroom together as a group.

At this point, the trial court questioned a juror about her ability to fairly judge the case and determined that she may remain as a juror.

> After you hear my final instructions, I will excuse the alternate jurors. And the final [twelve] jurors will leave the courtroom together as a group. At that time, those [twelve] will begin their deliberations to make a decision in the case. Your deliberations will be in secret. And you will not be required to explain your verdict to anyone. I will poll the jury, or in other words, ask the jury individually if that is their verdict at the end of the trial, because I have to make sure that the verdict is unanimous.

The trial court then excused two jurors and seated eight more. It continued:

> Those of you [whom] I have just called up, let me ask you a couple of questions. You have heard my basic instructions about what the job of a juror is. And that is to listen to the evidence as you hear it inside the four walls of the courtroom, listen to my instructions about the law in the case, and then applying that law to the evidence, and make a decision as to whether or not the State has carried its burden of either proving [D]efendant guilty beyond a reasonable doubt or not proving [D]efendant's guilt beyond a reasonable doubt. Or if you have a doubt as to [D]efendant's guilt, then they would be found not guilty.

The trial court then questioned the newly-seated jurors and excused a juror based on his answers. The trial court seated a new juror and questioned her. It then continued preliminary jury instructions:

> Now that I have described in outline form the trial itself, let me explain the functions that you and I will perform during the trial. I will decide which rules of law apply in this case. My decisions will be reflected in my responses to questions and objections the attorneys raise during the trial, as well as in my final jury instructions. I will instruct you as to the laws applicable to this case. You must then apply these rules of law, whether you agree with them or not, to the facts in this case. You should consider all of the evidence in light of your own observations and experience in life. And from that application, you will arrive at a verdict.

The trial court excused another juror and seated a new juror from the venire. It continued:

I told you that you would consider all the evidence in light of your own observations and experience in life, and from an application of the law to the evidence, you'll arrive at a verdict. I need to tell you that the law presumes [D]efendant is innocent of the charges against him. And this presumption remains with [D]efendant throughout every stage of the trial. And it is not overcome, unless from all the evidence in the case you are convinced beyond a reasonable doubt that [D]efendant is guilty. The State has the burden of proving the guilt of [D]efendant beyond a reasonable doubt. And this burden never shifts, but remains on the State throughout the trial of the case. [D]efendant is not required to prove his innocence. The State must have proven beyond a reasonable doubt all of the elements of the crimes charged, and that they were committed before the finding and returning of the indictment in this case.

The burden is on the State to prove by a preponderance of the evidence that the offense was committed in Rutherford County, Tennessee. Proof by a preponderance of the evidence means that the greater weight of the evidence must be in support of the State's contention. The law requires that a trial of the offenses be conducted in the county where the offenses were commenced or consummated. If you find the State has failed to prove by a preponderance of the evidence that the offense was commenced or consummated in Rutherford County, Tennessee, then you must return a verdict of not guilty.

The trial court excused another juror and seated a new juror from the venire. It continued:

You, as jurors, must decide whether the State has proven beyond a reasonable doubt [D]efendant has committed the crimes charged in the indictment. And you must base your decision only on the evidence and my instructions about the law. You are the exclusive judges of the facts in this case. Also, you are the exclusive judges of the law under the direction of the [c]ourt. You should apply the law to the facts in deciding the case.

You should consider all of the evidence in light of your own observations and experience in life. An important part of your job will be making judgments about the testimony of the witnesses who testify. A witness may be impeached by proving that he or she has made some material statements out of court which are at variance with his or her evidence on the witness stand. However, proof of such prior inconsistent statements may be considered by you only for the purpose of testing the

witness's credibility, and not as substantive evidence of the truth of the matter asserted in such statements.

Further, a witness may be impeached by a careful cross-examination involving the witness in contradictory, unreasonable, and improbable statements. However, immaterial discrepancies or differences in the statements of witnesses do not affect their credibility, unless it should plainly appear that some witness has testified falsely. You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness said. You are free to believe all, none, or part of any person's testimony.

At this point, the jury was sworn in.

Summary of Event

Because Defendant does not challenge the sufficiency of the evidence, we have provided a brief summary of the relevant testimony.

Dashaun Hickerson testified that, on the evening of January 2, 2017, Defendant was driving a car in which he and Robin Phillips were passengers. Defendant pulled into the parking lot of a Hilton hotel in Smyrna because Defendant "had to use the restroom." Defendant entered the hotel lobby while Mr. Hickerson and Mr. Phillips remained in the car. Approximately twenty minutes later, Defendant returned to the car. Defendant stated that "there's only one person in there." Defendant told Mr. Hickerson and Mr. Phillips to go into the hotel together and handed them a roll of duct tape.

Mr. Hickerson stated that, once inside the hotel lobby, Mr. Phillips asked the hotel clerk how much a room cost while Mr. Hickerson pretended to be on the phone. Then, Mr. Phillips showed the clerk a knife and "told [the clerk] to give [Mr. Phillips] the money." Mr. Hickerson said the clerk was visibly nervous and scared and that he opened a drawer and gave Mr. Phillips the money. Mr. Hickerson "walked the clerk to the back" and "put tape on his hands[.]" When Mr. Hickerson returned to the lobby, he saw Defendant take a cash register from the lobby and put it in the trunk of his car. Mr. Hickerson said that Defendant drove him and Mr. Phillips to Nashville where they bought heroin.

On cross-examination, Mr. Hickerson stated that, when he and Mr. Phillips entered the hotel intending to rob it, Defendant was outside the building. He agreed that Defendant was not present when Mr. Phillips "pulled the knife" or when Mr. Hickerson taped up the victim.

- 9 -

Decari Cradle testified that he was working at a Hilton hotel on January 2, 2017. Mr. Cradle testified that Defendant came in to use the restroom, but he never saw Defendant leave the hotel. Later, two other men came into the lobby. One man was speaking on the phone, and the other man asked Mr. Cradle the rate for a room. One man then held a knife and demanded that Mr. Cradle give him money. Mr. Cradle testified that he was "just really scared" and that they took him to the back and tied his hands. After the men returned to the front of the lobby, Mr. Cradle called his mother and then the police. He was able to remove the tape from his hands with scissors. Mr. Cradle said that, when the police arrived, he noticed the cash register by the bar was gone. Mr. Cradle did not see Defendant during the robbery, but he said he believed Defendant "was the lookout. And I knew it. It was my gut telling me. I knew certainly."

## Jury Instructions

After the close of proof, the trial court instructed the jury. Including several new instructions, the trial court repeated several of the preliminary jury instructions. It repeated the charged offenses in each count, as well as their lesser included offenses. The trial court also stated:

> As stated earlier, the indictment in this case is the formal written accusation charging [D]efendant with these crimes. The indictment is not evidence against [D]efendant, and does not create any inference of guilt.
>
> . . . .
>
> You are the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony. If there are conflicts in the testimony of the different witnesses, you must reconcile them, if you can, without hastily or rashly concluding that any witness has sworn falsely, for the law presumes that all witnesses are truthful.
>
> . . . .
>
> [D]efendant has not taken the stand to testify as a witness, but you shall place no significance on this fact. [D]efendant is presumed innocent. And the burden is on the State to prove his guilt beyond a reasonable doubt.
>
> He is not required to take the stand on his own behalf. And his election to do so cannot be considered for any purpose against him, nor can any inference be drawn from such a fact.

. . . .

A witness may be impeached by proving that he or she has made some material statements out of court which is at variance with his or her evidence on the witness stand. However, proof of such prior inconsistent statements may be considered by you only for the purpose of testing the witness's credibility, and not as substantive evidence of the truth of the matter asserted in such statements.

Further, a witness may be impeached by a careful cross examination involving the witness in contradictory, unreasonable, and improbable statements. However, immaterial discrepancies or differences in the statements of witnesses do not affect their credibility, unless it should plainly appear that some witness has willfully testified falsely.

When a witness is thus impeached, the jury has the right to disregard his or her evidence and treat it as untrue, except where it is corroborated by other credible testimony or the facts and circumstances proved on [sic] the trial.

At times during the trial, I have ruled on the admissibility of evidence. You must not concern yourself with these rulings. Neither by such rulings, these instructions, nor any other remarks which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be.

Statements, arguments, and remarks of [c]ounsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If any statements were or are made that you believe are not supported by the evidence, you should disregard them.

. . . .

If you find the State has proven [D]efendant guilty beyond a reasonable doubt, then you should find him guilty. On the other hand, if you find the State has not proven beyond a reasonable doubt [D]efendant's guilt or if you have a reasonable doubt as to his guilt, then you must find [D]efendant not guilty.

<u>Verdict and Sentencing</u>

After deliberations, the jury found Defendant guilty of aggravated robbery in count one, guilty of robbery acting in concert with two or more persons in count two, and not guilty of especially aggravated kidnapping in count three. The trial court merged counts one and two and sentenced Defendant as a Range I standard offender to serve eight years in the Tennessee Department of Correction with thirty percent release eligibility.

Defendant timely filed a motion for a new trial, which the trial court denied. Defendant now timely appeals.

**Analysis**

Defendant argues that the trial court abused its discretion by denying his motion for a continuance when he hired private counsel three days before trial. He also contends that the trial court abused its discretion by granting the State's motion to amend the indictment ten days before trial without also granting Defendant a continuance. Defendant asserts that the trial court erred by delivering preliminary instructions to the jury before the jury had been sworn. Finally, Defendant claims that his right to a fair trial was violated due to cumulative error.

The State responds that Defendant was not entitled to counsel of his choice, that the amended indictment satisfied due process notice requirements, that Defendant suffered no prejudice from the amendment to the indictment and the denial of a continuance, and that the trial court's error in delivering premature jury instructions was harmless.

*Continuance*

A trial court's decision to deny a continuance is reviewed for an abuse of discretion. *State v. Odom*, 137 S.W.3d 572, 589 (Tenn. 2004). "An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied [a] defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted." *State v. Hines*, 919 S.W.2d 573, 579 (Tenn. 1995). A trial court's decision to deny a continuance "will not be disturbed unless the requesting party makes a clear showing of prejudice." *State v. Teel*, 793 S.W.2d 236, 245 (Tenn. 1990) *superseded by statute on other grounds* as stated in *State v. Reid*, 91 S.W.3d 247 (Tenn. 2002)).

Here, as the trial court stated when it denied the continuance, there was "no indication that the representation" by Defendant's appointed counsel was "ineffective, inadequate, or [fell] below the range of competency expected of [d]efense [c]ounsel in criminal prosecutions" and "no proof or allegation that the accused and his appointed [c]ounsel have become embroiled in any irreconcilable conflict" or "that there's been any breakdown in communications between them." Moreover, "[t]here was no indication" that Defendant "was in any way unsatisfied or disappointed or had any anticipation that he would need to retain other [c]ounsel." Defendant does not argue on appeal that he had any problems whatsoever with appointed counsel. Further, the trial court permitted Mr. Cate to sit as "second chair" to appointed counsel. Notably, Defendant was acquitted on count three, indicating that the trial court's denial of the continuance did not prejudice him. Defendant has not made "a clear showing of prejudice." *Id*. Additionally, Defendant fails to demonstrate "that a different result would have followed had the continuance been granted." *Hines*, 919 S.W.2d at 579. Thus, the trial court did not abuse its discretion in denying the continuance, and Defendant is not entitled to relief.

*Amended Indictment*

An indictment must inform the accused of "the nature and cause of the accusation." U.S. Const. amend. VI; Tenn. Const. art. I, § 9. Further, an indictment is statutorily required to "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment." Tenn. Code Ann. § 40-13-202 (2017). An indictment that achieves its "overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000). "[T]he grant or denial of a motion to amend [an indictment] is a matter within the discretion of the trial court[,]" and "[t]his court will alter the trial court's decision only upon an abuse of discretion." *State v. Narrell Christopher Pierce*, No. M2014-00120-CCA-R3-CD, 2015 WL 2102003, at *15 (Tenn. Crim. App. May 5, 2015) (citing *State v. Kennedy,* 10 S.W.3d 280, 283 (Tenn. Crim. App. 1999)).

Tennessee Rule of Criminal Procedure 7(b)(2) states that "[w]ithout the defendant's consent and before jeopardy attaches, the court may permit such an amendment if no additional or different offense is charged and no substantial right of the defendant is prejudiced." Tenn. R. Crim. P. 7(b)(2).

Here, count one of the original indictment charged aggravated robbery based on the victim's suffering serious bodily injury. *See* Tenn. Code Ann. § 39-13-402(a)(2) (2017). Ten days before trial, the trial court granted the State's motion to amend count

one of the indictment to aggravated robbery by placing the victim in fear by using a deadly weapon. *See* Tenn. Code Ann. § 39-13-402(a)(1) (2017). Defendant argues that this amendment without a continuance prejudiced his substantial right to prepare an adequate defense because part of his defense would have been that no serious bodily injury occurred.

In this case, the trial court properly followed Tennessee Rule of Criminal Procedure 7(b). Defendant did not consent to the amendment, but the trial court properly amended the indictment because jeopardy had not yet attached and because no substantial right of Defendant was prejudiced. The trial court did not infringe upon Defendant's right to prepare an adequate defense. During the pretrial hearing, defense counsel admitted that the lack of serious bodily injury was not Defendant's sole theory, or even his primary theory, of defense:

> My *main theory* is that in the video in this crime, it clearly shows the two [c]o-[d]efendants, does not show my client. My *main theory* is my client was not involved in it. Secondary to that, though, would have been that there is no serious bodily injury. So, it certainly affects part of the trial, not the entirety of my theory. I'm not going to misrepresent that to the [c]ourt. However, it does affect my theory.

(emphasis added). Moreover, count three of the indictment was not amended, and it charged especially aggravated kidnapping "accomplished with a deadly weapon or by display of any article used or fashioned to lead the [victim] to reasonably believe it to be a deadly weapon." *See* Tenn. Code Ann. § 39-13-305(a)(1) (2017). Thus, Defendant was on notice that he had to prepare to defend against the use or display of a deadly weapon.

In *State v. Burkley*, 804 S.W.2d 458 (Tenn. Crim. App. 1990), the trial court permitted the State to amend the indictment on the day before trial. The original indictment listed the elements of burglary but failed to "specify the particular felony the defendant intended to commit once inside the residence." *Id*. at 460. This court found that the defendant was "on notice of the offense and the particular misconduct for which he was charged." *Id*. Thus, we found that the defendant was not "misled or surprised" by an amendment of the indictment the day before trial, and therefore, the defendant's trial preparation was not prejudiced. *Id*. at 461.

In the same way, Defendant was on notice for the offenses and the particular misconduct for which he was charged. Defendant knew he was charged with aggravated robbery in count one. Moreover, he was aware that he would have to defend against the use or display of a deadly weapon in count three. Defense counsel admitted that his

"main theory" was that Defendant was not involved in the offense at all. Thus, Defendant was not "misled or surprised" by the amendment. *See id*. A trial court's decision to deny a continuance "will not be disturbed unless the requesting party makes a clear showing of prejudice." *Teel*, 793 S.W.2d at 245. Because Defendant's trial preparation was not prejudiced, the trial court did not abuse its discretion by denying the motion for a continuance after the indictment was amended. Defendant is not entitled to relief.

*Preliminary Jury Instructions*

Tennessee Rule of Criminal Procedure 30(d)(1) states that, "[i]mmediately *after the jury is sworn*, the court shall instruct the jury concerning its duties, its conduct, the order of proceedings, the general nature of the case, and the elementary legal principles that will govern the proceeding." Tenn. R. Crim. P. 30(d)(1) (emphasis added). In general, "trial courts should refrain from instructing the jury before the panel is selected and sworn, consistent with Rule 30." *State v. Ahmon Watkins*, No. M2017-01600-CCA-R3-CD, 2019 WL 1370970, at *19 (Tenn. Crim. App. Mar. 26, 2019), *no perm. app. filed*. This is to ensure that every juror hears and understands the instructions. *See id*. However, absent evidence that the timing of the preliminary instructions affected the outcome of the trial, such a premature instruction is harmless. *See id*.

Here, the trial court improperly instructed the jury prior to swearing in the jury panel, but the error was harmless. Over the course of eight interruptions during the preliminary jury instructions, the trial court stopped to move, seat, or dismiss jurors twenty-two times. This likely caused some confusion among those in the jury venire who were trying to hear and understand the instructions. *See id*. However, prior to closing arguments, the trial court repeated almost every preliminary jury instruction to the sworn jury panel. The four instructions it did not repeat were:

(1) "[Y]ou should not single out any one or more of the instructions to the exclusion of another[, b]ut you should consider each instruction in light of and in harmony with the others[;]"

(2) "Your deliberations will be in secret[, a]nd you will not be required to explain your verdict to anyone. I will poll the jury . . . at the end of the trial, because I have to make sure that the verdict is unanimous[;]"

(3) "The order in which these instructions are given is no indication of their relative importance. You should not single out any one or more of them to the exclusion of another or others. But you should consider each one in light of and in harmony with the others[;]" and

(4) "The law requires that a trial of the offenses be conducted in the county where the offenses were commenced or consummated. If you find the State has failed to prove by a preponderance of the evidence that the offense was commenced or consummated in Rutherford County, Tennessee, then you must return a verdict of not guilty."

Thus, the vast majority of jury instructions prematurely given prior to the jury panel's swearing in were repeated at the end of trial. Prior to closing arguments, the trial court reiterated that the indictment and the attorneys' statements were not evidence, that the jurors were the exclusive judges of the facts and credibility of witnesses in the case, and that the jury could draw no conclusion against Defendant for his choice not to testify. It instructed the jury as to how impeachment of witnesses can occur, that Defendant was presumed innocent, that the State had the burden to prove his guilt beyond a reasonable doubt, and that the jury was not to concern itself with the trial court's rulings on the admissibility of evidence. The trial court discussed all of these issues in detail both during the preliminary instructions and in the closing jury instructions. Moreover, the trial court stated that the jury would be provided with a written copy of the instructions. Defendant has not included these written instructions in the record, so this court can only presume that the written instructions mirror the instructions as the trial court delivered them to the jury. A "defendant bears the burden of preparing an adequate record on appeal." *See State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). If the defendant fails to file an adequate record, this court must presume the trial court's ruling was correct. *See State v. Richardson*, 875 S.W.2d 671, 674 (Tenn. Crim. App. 1993). Defendant has presented no proof or argument that the "timing of the preliminary instructions affected the outcome of the trial" in any way; therefore, "such a premature instruction [was] harmless." *Id*. Defendant is not entitled to relief.

*Cumulative Error*

The cumulative error doctrine recognizes that there may be many errors committed in trial proceedings, each of which constitutes mere harmless error in isolation, but "have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, there must have been more than one actual error during the trial proceedings. *Id.* at 77.

Here, Defendant has not shown more than one error during the trial proceedings. Thus, he is not entitled to relief under the cumulative error doctrine.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE