FILED
07/21/2023
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### Submitted on Briefs

## BEN C. ADAMS v. BUCHANAN D. DUNAVANT ET AL. v. WATSON BURNS PLLC ET AL.

**Accelerated Appeal by Permission from the Court of Appeals
Probate Court for Shelby County
No. PR-24390      Joe Townsend, Judge**

_____

### No. W2023-00304-SC-T10B-CV

_____

Before his election to the bench, the probate judge in this interpleader action served as an expert witness in a 2017 case involving one of the defendants, Watson Burns, PLLC. In the current case, Watson Burns, PLLC and another law firm defendant moved for the probate judge's recusal based on the expert opinions the judge expressed in the 2017 case. The probate judge denied the motion, and the law firms filed an accelerated interlocutory appeal as of right to the Court of Appeals pursuant to Tennessee Supreme Court Rule 10B. The Court of Appeals reversed, ordered the probate judge's recusal, and remanded for assignment of another judge. Two other parties to the interpleader action then filed an accelerated application for permission to appeal in this Court pursuant to Rule 10B, section 2.07. We ordered the parties prevailing in the Court of Appeals to file a response to the application. Having thoroughly reviewed the Rule 10B application for permission to appeal, the response, all appendices, and the applicable law, we grant the Rule 10B application, dispense with additional briefing and oral argument, and hold that the probate judge's denial of the recusal motion was appropriate in this case. Therefore, we reverse the judgment of the Court of Appeals and remand for further proceedings consistent with this decision.

**Tenn. Sup. Ct. R. 10B Accelerated Appeal by Permission; Judgment of the Court of Appeals Reversed; Judgment of the Probate Court Reinstated.**

PER CURIAM.

Jeremy G. Alpert and George Joseph Nassar, Jr., Memphis, Tennessee, for the appellants, Lillian Dunavant and Mary Douglas Dunavant.

Lynn Wilhelm Thompson, Memphis, Tennessee, for the appellee Ben C. Adams.

John S. Golwen, Memphis, Tennessee, for appellee Bass, Berry & Sims PLC.

Patrick Glenn Walker, Memphis, Tennessee, for appellees Buchanan D. Dunavant and Harris Shelton Hanover Walsh, PLLC.

William F. Burns, William Edward Routt, III, and Frank Lee Watson, III, Memphis, Tennessee, for appellee Watson Burns, PLLC.

## OPINION

## I. BACKGROUND

Buchanan D. Dunavant is a beneficiary of two trusts established by his father and is due certain distributions from those trusts. Watson Burns, PLLC and Bass, Berry & Sims PLC (collectively, "Law Firms") claim an interest in Mr. Dunavant's trust distributions to pay their fees for representing him in litigation that is still pending in the Circuit Court for Shelby County.[1] The Law Firms also claim a statutory lien in the trust funds. *See* Tenn. Code Ann. §§ 23-2-102, -103. Mr. Dunavant's former spouse, Mary Douglas Dunavant, and the three children from their marriage, Mary Wilkinson Dunavant, Lucy Hughes Dunavant, and Lillian Gardner Dunavant (collectively, "Dunavant children"), also claim an interest in the trust distributions due Mr. Dunavant.[2] Their interest is based on settlements they reached with Mr. Dunavant in four probate actions they filed against him. In these actions, the Dunavant children alleged that Mr. Dunavant breached fiduciary duties and mishandled certain trusts that were established for their benefit. Mr. Dunavant and the Dunavant children settled these cases prior to trial. The probate judge approved the four settlements, including the requirement that consideration for the settlements would be provided by the trust distributions due Mr. Dunavant.

---

[1] According to a declaration from Mr. Dunavant that the Law Firms filed in the probate court, Mr. Dunavant agreed to pay the Law Firms forty percent "of any gross recovery (plus expenses) that [he has] a right to collect from any Trust created by [his] father and/or from any source of funds stemming or coming from his [father's] Estate." Mr. Dunavant also declared that the Law Firms "are entitled to the fees and expenses sought and outlined in detail in their June 2, 20[2]2, Amended and Verified Attorney Charging Lien," which consist of $453,714.00 in attorneys' fees and $72,448.00 in expenses, for a total of $526,126.40. Mr. Dunavant acknowledged these fees and expenses should be paid from the trust distributions at issue in the interpleader action.

[2] Mr. Dunavant's former spouse, Mary Douglas, sued on her own behalf and as guardian for their minor children, Mary Wilkinson Dunavant and Lucy Hughes Dunavant. Their adult child, Lillian Gardner Dunavant, sued on her own behalf.

The trust distributions due Mr. Dunavant are not sufficient to satisfy the claims of the Law Firms and of the Dunavant children; therefore, the attorney trustee[3] for the trusts filed an interpleader action in probate court on November 29, 2022, seeking to deposit the funds with the Shelby County Probate Court. The trustee also requested an award of attorneys' fees and costs and an order discharging him from liability and dismissing him from the case.

On December 6, 2022, the Law Firms moved for disqualification and recusal of the probate judge. The Law Firms asserted that in 2017, before taking the bench, the probate judge served as an expert witness for a petitioner in another trust dispute in which one of the Law Firms, Watson Burns, PLLC ("Watson Burns"), represented the respondent. The trial court in the earlier case granted the respondent's motion to dismiss, ruled the petitioner's challenge was frivolous, and awarded sanctions and attorneys' fees to the respondent. When Watson Burns (and another law firm not involved in this action) filed their fee applications, the petitioner opposed the fee application and hired the probate judge, who was a private attorney at that time, to review it.

The Law Firms point out that, in his 2017 expert affidavit, the probate judge opined that the attorneys' fee request of $1,933,767.95 was "outrageous and clearly excessive" under Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.5 because the "litigation was not complex and basically involved a simple matter of legal interpretation," the complaint "was a relatively simple and straightforward request for information that did not involve any complex legal issues," "[t]here was no discovery," and "[t]here were zero depositions." He opined that experienced attorneys should have taken no more than forty-to-sixty hours to prepare and present the motion to dismiss to the trial court. He noted that Watson Burns and the other law firm were seeking to recover attorneys' fees for 4,282.7 hours of work, even though the case was filed on June 25, 2015, a hearing on the motion to dismiss occurred on December 7, 2015, and an order dismissing the case was entered on February 28, 2016. He also believed, based on his own thirty years' experience and his practice of charging $250 per hour for out-of-court time and $300 for in-court time, that the hourly rates the law firms charged were excessive. They charged $320 for associates and between $450 and $525 for partners. Regarding a co-defendant law firm that is not involved here, he suggested that the block billing in the fee application was inadequate, inappropriate, and not sufficiently specific to enable the trial court to determine whether the time had been spent on activities for which the trial court had awarded attorneys' fees. He further stated that the redacted fee application Watson Burns submitted was "unintelligible" and failed to describe with sufficient specificity the tasks performed so that the trial court could determine whether the time had been spent on the matter for which fees had been awarded.

---

[3] Ben C. Adams is the attorney trustee.

The Law Firms asserted that the opinions the probate judge expressed in the 2017 affidavit created an actual and apparent bias against Watson Burns, which detrimentally impacted the interests of Bass, Berry & Sims PLC in the interpleader action.

On December 7, 2022, the day after the Law Firms moved for disqualification, the probate judge, unaware of their motion, granted the trustee's request to interplead the funds, awarded the trustee his attorneys' fees and court costs, and dismissed him from the case.

The Law Firms raised the probate judge's failure to address their recusal motion in the interpleader action in an interlocutory recusal appeal as of right to the Court of Appeals. *See Adams v. Dunavant*, No. W2022-01747-COA-T10B-CV, 2023 WL 1769356, at *2 (Tenn. Ct. App. Feb. 3, 2023) [hereinafter *Adams I*]. The Court of Appeals in *Adams I* vacated the probate judge's order on the interpleader petition and remanded with instructions for the probate judge to decide the recusal motion promptly and, if the judge denied the motion, to "state in writing the grounds upon which he denied the motion." *Id.* at *4; *see* Tenn. Sup. Ct. R. 10B, § 1.03.

Following the remand, on February 8, 2023, the probate judge denied the Law Firms' December 6, 2022, recusal motion.[4] The probate judge first explained the various reasons and processes that culminated in his being unaware of the pendency of the recusal motion. He then turned to evaluating the merits of the recusal motion, reasoning as follows:

> The 10B motion makes specific factual and legal arguments regarding [the probate judge's] decisions in the four related Shelby County Probate Cases. These factual and legal arguments are moot based upon [*Adams I*] that denied the motions to recuse in the four related Shelby County Probate Cases. Even if the decisions in the four related cases were not moot, case law makes it clear that the mere fact that a judge has ruled adversely to a party is not grounds for recusal. *Berg v. Berg*, [No. M2018-01163-COA-T10B-CV,] 2018 WL 3612845[,] at *5 (Tenn. Ct. App. [July 27,] 2018) (quoting *McKenzie v. McKenzie*, [No. M2015-00010-COA-T10B-CV,] 2014 WL 575908[,] at *4 (Tenn. Ct. App. [Feb. 11,] 2014)). []In fact, ["r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification.["] *Id.* (quoting[] *McKenzie*, 2014 WL 575908, at *4). Consistent adverse rulings may lead a party to wish for another trial judge, but they do not provide a basis for requiring the trial judge's recusal from the case. *Runyon v. Runyon*, [No. W2013-02651-COA-T10B,] 2014 WL 1285729[,] at *10 (Tenn. Ct. App. [Mar. 31,] 2014). "If the rule were otherwise, recusal would be required as a matter of course since trial courts

---

[4] Order Denying Rule 10B Motion Related to Interpleader Action (Feb. 8, 2023).

necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001).

The only other specific fact alleged in the 10B motion for recusal concerns a 2017 opinion in an affidavit by [the probate judge,] then [a] private attorney[,] involving Watson Burns and other attorneys regarding the reasonableness of fees as a basis for sanctions against a trust beneficiary in the amount of approximately 1.9 million dollars. The amount appeared to exceed the amount of fees related to [an] action for which the trust beneficiary was being sanctioned. The issue regarding the sanctions was resolved by the trial court, the appellate courts, and the parties years ago. [When the probate judge was an attorney, he] did not represent a party in that action. These facts do not appear to be a basis for recusal. A judge's prior participation in other litigation as a private attorney adverse to a party in current litigation does not necessitate disqualification from presiding over different litigation involving one of the same parties. *See*[] *Balmoral Shopping* [*Ctr.*]*, LLC v. City of Memphis, et al.*, [No. W2022-01488-COA-T10B-CV,] 2022 WL 17075631[, at *3] (Tenn. Ct. App. [Nov. 18,] 2022).

On February 13, 2023, the probate judge again granted interpleader and ordered the trustee to deposit the funds due Mr. Dunavant with the Shelby County Probate Court Clerk.[5] The probate judge directed the Clerk to pay the Dunavant children from the funds the trustee deposited according to the previously approved settlement agreements. He also ordered the Clerk to pause distribution of any funds remaining after the settlements were satisfied, pending further orders of the probate judge.

The probate judge made additional findings as well, including that the Law Firms forfeited their attorney charging lien against Mr. Dunavant. Despite this finding, the probate judge assumed jurisdiction over a petition for the Law Firms' attorneys' fees for services rendered to Mr. Dunavant in the circuit court proceeding, and declared:

The Firms shall file a Petition for Attorney Fees within Thirty (30) days of the Trustee's notice to the Court and the parties that the funds have been deposited with the Shelby County Probate Court Clerk. If the Firms do not file a Petition for Attorney Fees within the Thirty (30) day period, the Court will issue an order directing the Shelby County Probate Clerk to disperse the balance of funds to Buchanan D. Dunavant.

---

[5] Order Granting Interpleader, Directing Deposit of Funds with Court Clerk and Discharging Trustee from Liability (Feb. 13, 2023).

The Law Firms then filed a second accelerated interlocutory appeal as of right in the Court of Appeals pursuant to Rule 10B. The Court of Appeals reversed the trial court's denial of the recusal motion and remanded for assignment to another judge. *Adams v. Dunavant*, No. W2023-00304-COA-T10B-CV, 2023 WL 3066511, at *4 (Tenn. Ct. App. Apr. 25, 2023). The Court of Appeals explained its ruling as follows:

> As the probate judge correctly noted, a judge is generally not required to recuse simply because he advocated against one of the parties while in private practice. *Balmoral Shopping Ctr., LLC* [], 2022 WL 17075631, at *3 [] (holding recusal unnecessary even though the judge, before taking the bench, served as opposing counsel against one of the parties); *see also* Hon. Virginia A. Phillips & Hon. Karen L. Stevenson, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial-National Edition*, Ch. 16-D, (The Rutter Group 2022) (recognizing "[a] judge's prior career is generally *not* ground for disqualification in cases in which the judge has no knowledge of the facts or interest"). But serving as a lawyer in a case is not the same as serving as an expert witness in a case. A lawyer's "duty [is] to advance a client's objectives diligently through all lawful measures." ABA Comm. on Ethics & Pro. Resp., Formal Op. 407 (1997) [hereinafter Formal Op. 407]. The lawyer's representation "does not constitute an endorsement of the client's political, economic, social, or moral views or activities." Tenn. Sup. Ct. R. 10, Rule 1.2(b). The expert witness offers his own views. A "testifying expert provides evidence that lies within his special knowledge by reason of training and experience and has a duty to provide the court . . . truthful and accurate information." Formal Op. 407.
>
> We presume the judge's prior expert testimony about Watson Burns'[] billing statements and fees was truthful. Of course, the judge's prior opinions might be assumed to be limited to the billing statements submitted and fees requested in the case for which he was hired as an expert. And the circumstances under which the [Law] Firms are seeking recovery of a fee are different here. This is an interpleader action; the [Law] Firms are not seeking an award of fees from the court. So the opinions the judge offered as expert witness might be insufficient alone to justify recusal.
>
> Here, the [Law] Firms also point to other actions of the probate court judge that they claim indicate bias. Among other things, they complain that the court's order on their motion for disqualification and recusal "does not address or explain how or whether he can act with impartiality in connection with Watson Burns' lien and claim for legal fees in light of the inflammatory opinions he lodged against Watson Burns just a few years ago in connection

with a fee request." They also complain that the court's order "summarily extinguish[ed] [the Firms'] liens by finding that . . . such liens are forfeited." The court did so "without allowing any party to file answers and preserve defenses and without holding any hearings."

Taking all these facts together, we find "a reasonable basis for questioning the judge's impartiality." *Davis*, 38 S.W.3d at 564 (citation omitted). We agree that the court's order does not address the probate judge's prior opinion testimony. Instead, it summarily concludes that opinion testimony is not a proper basis for recusal. And, under the circumstances, the relief the probate court granted on the petition for interpleader provides an additional basis for questioning impartiality. Usually, adverse rulings alone do not establish bias. [*State v.*] *Cannon*, 254 S.W.3d [287,] 308 [(Tenn. 2008)]. But here the court forfeited the [Law] Firms' "charging lien" in its initial order even though no party had answered the petition for interpleader and the trustee had not requested that relief in his petition. The court seemingly made factual findings without holding an evidentiary hearing. And it ordered distribution of the interpleaded funds to some claimants without hearing from all the competing claimants.

*Id.* at *3–4 (some alterations in original) (emphasis in original).

After the Court of Appeals decision, the Dunavant children then filed a Rule 10B application for permission to appeal in this Court. Having thoroughly reviewed the Rule 10B application, the Law Firms' response, all appendices, and the applicable law, we grant the Rule 10B application, dispense with additional briefing and oral argument, and hold that the probate judge's denial of the recusal motion was appropriate in this case.

## II. STANDARD OF REVIEW

De novo review applies to our resolution of this Rule 10B appeal. Tenn. Sup. Ct. R. 10B, § 2.07 ("The Supreme Court shall decide the appeal . . . upon a de novo standard of review."). "The provisions of [Tennessee Rule of Appellate Procedure] 11 . . . do not apply to such appeals." *Id.* Thus, the Law Firms' assertion that the issues in this appeal do not merit review under the standards of Rule 11 misses the mark.

## III. ANALYSIS

"Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis*, 38 S.W.3d at 564); *see also State v. Griffin*, 610 S.W.3d 752, 757–58 (Tenn. 2020). To preserve public confidence

in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.

To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).

Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564–65).

The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

Furthermore, rulings adverse to the proponent of a recusal motion are not, standing alone, grounds for recusal. *Cannon*, 254 S.W.3d at 308; *Davis*, 38 S.W.3d at 564; *Duke v. Duke*, 398 S.W.3d 665, 671 (Tenn. Ct. App. 2012). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). "[T]he mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Davis*, 38 S.W.3d at 565 (citing *State v. Hines*, 919 S.W.2d 573, 578 (Tenn. 1995)). The "adversarial nature of litigation" makes it necessary for trial judges to "assess the credibility of those who testify before them, whether in person or by some other means," and "the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse." *Id.* "If the rule were otherwise,

recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartial[it]y issue for strategic advantage, which the courts frown upon." *Id.*

Applying these standards de novo to the facts of this case, we cannot conclude that a person of ordinary prudence in the probate judge's position, knowing all the facts known to him, would find a reasonable basis for questioning his impartiality. The opinions he expressed in the 2017 affidavit concerned a different case and distinct legal questions, specifically whether the fees requested in that unrelated case were reasonable and whether the fee application was sufficiently detailed and specific to enable the trial judge in that case to determine if the work for which fees were claimed related to the matter for which fees had been awarded. This matter involves neither the reasonableness of fees nor the sufficiency of any fee application. Even assuming that expressing an opinion on a matter as an expert witness could constitute grounds for recusal in some situations, the 2017 affidavit does not indicate bias because it is not sufficiently related to the issues in this case.

The Court of Appeals seemed to suggest that expressing an opinion as an expert witness is more problematic than acting in a representative capacity as a lawyer. But the fact remains that the expert opinion at issue did not constitute evidence of actual or perceived bias. In any event, the Rule of Judicial Conduct that requires disqualification for previous public statements applies only to statements made "while a judge or judicial candidate . . . other than in a court proceeding, judicial decision, or opinion." Tenn. Sup. Ct. R. 10, RJC 2.11(A)(5). No rule contemplates disqualification for public statements made before becoming a judge or judicial candidate or while serving as an expert witness.

*Davis v. Liberty Mutual Insurance Company* is instructive. In *Davis*, the trial judge previously resolved a workers' compensation case and expressed negative opinions about the credibility of an expert witness. *Id.* at 563–64. The employee in *Davis* moved for the trial judge's recusal because the employee planned to call the same expert witness to testify. *Id.* at 562–64. The employee alleged that the trial judge's negative assessment of the expert witness's credibility in the earlier case amounted to bias against the expert requiring the trial judge's recusal. *Id.* at 564–65. The trial court disagreed and denied the recusal motion. *Id.* at 565. The employee appealed, and this Court affirmed. *Id.*

The *Davis* Court declared: "the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal." *Id.* The *Davis* Court opined that the trial court's statements in the prior case concerning the expert witness's credibility were not "an objectively reasonable basis for questioning the judge's impartiality" in a subsequent case. *Id.*

Although *Davis* involved a previous ruling made by a trial judge, rather than statements made by an expert witness, we reach the same conclusion here. The opinions the probate judge expressed in the 2017 affidavit about the fee application at issue in the 2017 case are not an objectively reasonable basis for questioning the probate judge's impartiality. The probate judge's 2017 opinions related specifically to the fee application and legal issues in that separate case. His opinions were not inherently hostile to or biased against Watson Burns[6] but were his assessment of the particular fee application in that case.

The probate judge's adverse rulings in the interpleader action and in the four probate cases the Dunavant children filed do not create an objectively reasonable basis for questioning the probate judge's impartiality. As noted in *Davis*, *Alley*, and many other Tennessee decisions, "[r]ulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." *Alley*, 882 S.W.2d at 821. "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartial[it]y issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565.

In a Rule 10B appeal, the only order properly before the reviewing court is the recusal order. Therefore, we express no opinion on the legal propriety of the probate judge's rulings in the interpleader action or in the four other probate actions. We simply hold that these adverse rulings are not sufficient to support a conclusion that "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Cook*, 606 S.W.3d at 255 (quoting *Davis*, 38 S.W.3d at 565–65 (quoting *Alley*, 882 S.W.2d at 820)).

## IV. CONCLUSION

For the reasons stated herein, the judgment of the Court of Appeals is reversed, and the judgment of the probate judge denying the recusal motion is reinstated. This matter is remanded for further proceedings consistent with this decision. Mandate shall issue immediately, as a petition for rehearing is not permitted. Tenn. Sup. Ct. R. 10B, § 2.07.

---

[6] The trial court in the 2017 case "expressed its displeasure with the considerable amount of fees expended in the case and declined to award the trust the full amount of its attorneys' fees." *In re Willard R. Sparks Revocable Tr.* 2004, No. W2017-01497-COA-R3-CV, 2018 WL 6720687, at *3 (Tenn. Ct. App. Dec. 20, 2018). An appeal followed. *Id.* The Court of Appeals affirmed the trial court's decision awarding an attorneys' fee award of $200,000, just over ten percent of the approximately $1.9 million the attorneys' fee application requested. *Id.* at *3, *6.

- 10 -

PER CURIAM